MIDWEST FAMILY MUTUAL INSUR-
ANCE COMPANY, Depositors Insur-
ance Company, Respondents,

v.

Douglas SCHMITT, et al., Defendants,

Tracy Olene, Appellant.

Nos. C8–02–563, C8–02–580.

Court of Appeals of Minnesota.

Oct. 8, 2002.

Michael J. Tomsche, Bryan B. Carroll, Tomsche, Sonnesyn & Tomsche, P.A., Minneapolis, MN, for respondent Midwest.

Robert E. Kuderer, Teresa M. Thompson, Johnson & Condon, P.A., Minneapolis, MN, for respondent Depositors.

James A. Terwedo, Jordan, MN, for defendants.

John P. Clifford, Meshbesher & Spence, Woodbury, MN, for appellant.

Considered and decided by G. BARRY ANDERSON, Presiding Judge, TOUSSAINT, Chief Judge, and HUDSON, Judge.

## OPINION

HUDSON, Judge.

Respondents Depositors Insurance Company (Depositors) and Midwest Family Mutual Insurance Company (Midwest Family) each brought declaratory-judgment actions seeking a declaration that the respective homeowner's insurance policies issued by them did not provide coverage for appellant's injuries. Appellant (Tracy Olene) and the insureds, Douglas and Mathias Schmitt, were attempting to lift Olene's car off of a flatbed trailer and move it to another location. Olene was injured when a chain, which had been wrapped through the car windows and attached to a motorized crane, broke, causing the car to fall on top of him. The district court granted summary judgment in favor of respondents, finding that the motor-vehicle exclusion in respondents' policies precluded coverage for appellant's injuries. Because the breaking of the chain could not have occurred independently of the use of a motor vehicle, it is not a divisible, concurrent cause, and the motor-vehicle exclusion in the insurance policies precluded coverage for appellant's injuries. We affirm.

## FACTS

Mathias Schmitt (Mathias) runs an auto scrap business from his home, which includes a shop for working on cars. The business, known as R & P Auto, sells salvaged car parts and scraps the metal. Mathias has a dealer's license from the State of Minnesota and pays $25 a year for a county permit to store oil waste. R & P Auto has a separate bank account; these funds are kept separate from personal finances. The Schmitts schedule "R & P Auto" on their income taxes as a "business."

On March 4, 2000, Olene went to Mathias's home to drop off his 1970 Malibu, which he was selling for scrap value. There, he was to meet with Douglas Schmitt (Doug), Mathias's son. Olene brought his car to Mathias Schmitt's home on a flatbed trailer owned by Olene.

Because Doug needed to transport the Malibu to a different location in the scrap yard, the car had to be lifted off of Olene's trailer. In order to lift the car, Doug used a motorized crane, which he had bought for Mathias's scrap yard for this specific purpose. The crane had a heavy-duty cable with a hook that attached to objects for lifting.[1] Doug passed a chain through the window of the Malibu, and with Olene's help, passed it through the car and folded both ends of the cable onto the roof of the car. Next, Doug secured both ends of the chain by connecting hooks at either end of the chain onto each other. Finally, he attached the crane cable, which has its own hook, to the chain wrapped around the car. Doug then activated the winch on the crane, and the car was lifted off the trailer.

When the Malibu was lifted off the trailer, Doug noticed that oil was leaking from the car, and he placed a pan underneath the car to catch the oil. When the pan began to fill, he removed it, which caused his hands to become soiled. Doug turned his back on Olene and grabbed a rag to wipe his hands. At this time, Olene grabbed a second pan, placed it underneath the vehicle, and, as he was coming out from under the car, the chain broke on a weld on one of the links. The Malibu fell on Olene, causing serious injuries.

Olene sued Mathias and Doug Schmitt, who tendered defense of the lawsuit to Depositors and Midwest Family, their respective homeowner's liability insurers. Both insurers brought declaratory-judgment actions claiming that they were not obligated to defend or indemnify the Schmitts. Midwest Family also contends that Olene's negligent-inspection claim is barred on appeal because it was not specif-ically alleged in Olene's complaint. The district court granted summary judgment in favor of Depositors and Midwest Family, finding that the motor-vehicle exclusion under both policies precluded coverage. Olene appeals.

## ISSUES

1. Is Olene's claim that the injury occurred as a result of the negligent inspection and breaking of the chain properly before this court?

2. Did the district court err when it concluded that the motor-vehicle exclusion in the homeowner's policies issued by Depositors and Midwest Family precluded coverage?

## ANALYSIS

■■■ On review of a summary judgment, an appellate court will assess whether there are genuine issues of material fact and whether the district court erred as a matter of law. *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990). The interpretation of insurance language is a question of law, which an appellate court will review independently. *Meister v. Western Nat'l Mut. Ins. Co.,* 479 N.W.2d 372, 376 (Minn.1992).

■■■ "General principles of contract interpretation apply to insurance policies." *Lobeck v. State Farm Mut. Auto. Ins. Co.,* 582 N.W.2d 246, 249 (Minn.1998). If the language is clear and unambiguous, it "must be given its usual and accepted meaning." *Id.* (quotation and citation omitted). An appellate court will construe exclusions from coverage narrowly against the insurer. *State Farm Ins. Cos. v. Seefeld,* 481 N.W.2d 62, 64 (Minn.1992). The

---

1. The crane has three sets of wheels, dual on each side and dual in the back. It also has a four-cylinder gas motor and is designed to move across the land while lifting heavy ob-jects. The crane has a three-speed manual transmission, brakes, and two white lights in the back.

burden of proving that the policy exclusion bars coverage rests on the insurance company. *Id.*

### I.

■ Midwest Family argues that Olene's negligent-inspection claim is not properly before this court because it was not alleged in his complaint. We disagree.

Rule 8.01 of the Minnesota Rules of Civil Procedure provides for broad pleadings, also known as notice pleading. *See* Minn. R. Civ. P. 8.01. The Minnesota Supreme Court has stated that

> [u]nder the Rules of Civil Procedure, only notice pleading is required. The rules do not require adherence to a mechanistic and rigid formula. Instead, the pleadings are liberally construed to insure that the defending party is given adequate notice of the claim.

*L.K. v. Gregg,* 425 N.W.2d 813, 819 (Minn. 1988) (citation omitted).

Olene stated in his complaint that "defendants were negligent in the way they unloaded the automobile and in the manner in which they used the equipment." Although Olene did not specifically allege negligent inspection of the chain until his brief was filed here on appeal, Midwest Family was clearly put on notice that Olene's claim involved some allegation concerning the manner in which the equipment was used. Thus, Olene's more specific negligent-inspection claim should not have been a surprise to Midwest Family and falls within the scope of the broader allegations in his complaint. Because pleadings are liberally and broadly construed, the allegations in his complaint were adequate to support his later, more specific negligent-inspection claim.

### II.

Olene claims that the breaking of the chain is a divisible, concurrent cause covered under the Schmitts' homeowners' policies, and that the district court erred in concluding that the motor-vehicle exclusion in the policies precludes coverage. The motor-vehicle exclusion language is identical in both policies. Under this exclusion, there is no coverage for bodily injury or property damage arising out of

> [t]he ownership, maintenance, use, loading or unloading of motor vehicles or all other motorized land conveyances, including trailers, owned or operated by or rented or loaned to an "insured."

Appellant, however, relies on *Waseca Mut. Ins. Co. v. Noska,* 331 N.W.2d 917 (Minn.1983). In *Noska,* the Minnesota Supreme Court held that a plaintiff may recover on the tortfeasor's homeowner's policy, as well as the tortfeasor's automobile liability policy, for injuries sustained through the use of a motor vehicle when "two independent acts, one vehicle-related and one nonvehicle-related * * *" combine to cause the injury. *Noska,* 331 N.W.2d at 921. In *Noska,* the insured placed fire embers in uncovered barrels on a trailer and hauled the barrels to a landfill. *Noska,* 331 N.W.2d at 920. Along the way, sparks flew out, igniting fires and causing extensive property damage. *Id.* The supreme court held that the homeowner's policy provided coverage for the nonvehicle-related cause of the fire (placing live embers in an uncovered barrel with other debris), without regard to the intervention of the contributory cause of the use of the motor vehicle that was excluded from coverage. *Id.* at 923.

But appellant's reliance on *Noska* is misplaced because the Minnesota Supreme Court, in *State Farm Ins. Cos. v. Seefeld,* 481 N.W.2d 62 (Minn.1992), limited the application of *Noska* to causes that arise

independently of each other and that could have operated independently of the use of a motor vehicle to cause the accident. In *Seefeld*, the claimant was injured due to the negligent driving of an all-terrain vehicle (ATV), combined with a negligently designed and constructed trailer being pulled by the ATV. *Seefeld*, 481 N.W.2d at 65. The supreme court acknowledged its previous ruling in *Noska* and noted that an individual *may* recover from the automobile and the homeowner's policy where "two independent acts, one vehicle-related and one nonvehicle-related, combine to cause an accident." *Id.* at 64. Nevertheless, the supreme court concluded that the ultimate question is whether the non-automobile-related cause *could have* operated independent[ly] of a motor vehicle to cause the loss. *Id.* at 65.[2] Stated alternatively, if both causes are vehicle-related, the motor-vehicle exclusion precludes coverage.

The *Seefeld* court further narrowed the holding in *Noska* by focusing the inquiry on the actual loss or injury suffered.[3] In other words, the relevant inquiry is whether the causes could have operated independently to cause the *actual injury* that occurred. *Seefeld*, 481 N.W.2d at 65. In doing so, the supreme court recognized that in some cases, hypothetical scenarios under which the injury could have been caused independently of a motor vehicle may be too remote to fall within the divisible, concurrent cause doctrine. *Id.* Thus, in *Seefeld*, the court stated that injuries caused by the negligent design and construction of the utility trailer "necessarily

arose out of the use of a motor vehicle" and that "the only way in which [the injured girl] could have been exposed to the design risk was through the use of the motor vehicle." *Id.* at 65, citing *State Farm Ins. Cos. v. Seefeld*, 472 N.W.2d 170, 174 (Minn.App.1991). The court added that "the *remote possibility the injuries in this case could have been caused without the use of a motor vehicle* is insufficient to bring the trailer's negligent design and construction under *Noska's* concurrent-cause doctrine." *Id.* (emphasis added). The *Seefeld* court implicitly rejected the idea that coverage will be extended as long as the injured party can conceive *any* set of facts under which the injury might have occurred apart from the use of a motor vehicle.

Recently, this court has declined to apply *Noska* and instead has followed the more narrow standard set forth in *Seefeld*. In *Austin Mutual Ins. Co. v. Klande*, 563 N.W.2d 282, 283 (Minn.App.1997), Rodney, a minor, was a guest in the insured's home. The insured's son took Rodney on a ride on his father's motorcycle. *Id.* After the ride, he parked the motorcycle in the garage and engaged one of the kickstands. *Id.* Rodney wandered into the garage, and as he attempted to mount the motorcycle, it fell over, pinning him underneath and causing him to burn his leg when it touched the hot muffler. *Id.* Rodney's parents argued, as does Olene here, that the motor-vehicle exclusion did not preclude coverage because "the negligent su-

---

**2.** Thus, the *Seefeld* court observed that in *Noska,* there was a divisible, concurrent cause because the burning embers might have caused the fire and resulting damage through other negligence unrelated to the use of a motor vehicle. *Seefeld*, 481 N.W.2d at 65.

**3.** Appellant suggests that, under *Noska,* the injured party need not show that *the* actual

injury could have occurred apart from the use of a motor vehicle, but only that *an* injury could have occurred under a range of possible scenarios. While we question whether *Noska* can be read that broadly, in any event, *Seefeld* focuses the inquiry on the actual injury suffered.

pervision claim create[d] a concurrent causation situation putting this case within the holding of * * * *Noska.*" *Id.* at 284. This court concluded that *Noska* was inapplicable, reasoning that

> [b]ecause the negligent supervision claim is so intertwined with and intimately connected to the insureds' ownership and use of the motorcycle *it cannot be said that the claim arose independently of the motorized vehicle related cause.*

*Id.* (emphasis added).

Similarly, in *Illinois Farmers Ins. Co. v. Duffy,* 618 N.W.2d 613, 616 (Minn.App. 2000), *review denied* (Minn. Jan. 26, 2001), this court again declined to apply *Noska,* relying largely on the "remote possibility" analysis articulated in *Seefeld.* In *Duffy,* respondent allowed his teenage daughter to throw a party and also purchased liquor for the party. *Id.* at 614. Two of the teenage guests left the party in a vehicle; the driver was drunk. *Id.* The drunk teenager struck a tree, killing himself and injuring the passenger. *Id.* Relying on *Noska,* the insureds in *Duffy* argued that "just as damages [in *Noska*] could have resulted from the live embers without the act of driving, so too the intoxicated minors could have been injured through the use of alcohol without a motor vehicle, such as from alcohol poisoning or sustaining injuries from a fight." *Id.* at 616. Rejecting this argument (and implicitly appellant's remote, unrelated, alcohol-poisoning theory), the *Duffy* court concluded that "[a]bsent the minor driver's use of the motor vehicle, the resulting injuries and death would not have occurred." *Id.* The *Duffy* court added that "if there is only a 'remote possibility' that the injury could have occurred from the concurrent cause without a motor vehicle, the [divisible, concurrent cause] doctrine will not be applied." *Id.*

*Seefeld* makes clear that for the divisible, concurrent-cause doctrine to apply, the injured party must establish that the non-vehicle-related cause could have operated independently of a motor vehicle to cause the loss. In addition, the possibility that the injury could have been caused without the use of a motor vehicle cannot be too remote.

Here, a chain was wrapped around the roof of a car, and a cable, attached to the motorized crane, lifted the car off the ground. The chain broke, dropping the car on Olene. In determining whether the motor-vehicle exclusion precludes coverage under the homeowner's policies, we must determine whether the two causes, the non-vehicle-related cause (the breaking of the chain) and the vehicle-related cause (the use of the motorized crane), could have operated independent[ly] to cause the loss. *Seefeld,* 481 N.W.2d at 65. If the injury caused by the chain breaking could have occurred only through the use of a motor vehicle, the motor-vehicle exception in respondents' policies applies and coverage is precluded. *See Duffy,* 618 N.W.2d at 616.

Olene claims that *Noska* is applicable here because, in theory, the defective chain could have broken without the use of the motorized crane, making the two acts divisible. Olene imagines a situation where

> a stationary pole fitted with a horizontal, swinging boom to which a cable was attached that could be raised or lowered by a gas-powered winch. The boom could have been swung over the trailer, the cable attached to the chain that was wrapped around the roof of the car and then lifted off the trailer with the aid of the stationary winch. Before the boom could be swung over to deliver to a junk

pile, the chain breaks, causing the same injury.

(Appellant's Br. at 15.)

Olene stresses that under *Noska*, the court can consider alternate theoretical possibilities (even if unsupported by the factual record) in determining whether the injury could have occurred independently of a motor vehicle.

We acknowledge that *Noska* has never been overruled and that the district court may consider theoretical possibilities to explain how the accident could have occurred without a motor vehicle in determining whether to apply the divisible, concurrent-cause doctrine. But if those possibilities are too remote, the doctrine will not be applied. *Seefeld*, 481 N.W.2d at 65; *Duffy*, 618 N.W.2d at 616. Thus, the question here becomes whether the theory described by Olene, or any other theory, is too remote to have caused the injury independently of a motor vehicle.

We conclude that while the negligent inspection of the chain was a factor in the cause of the accident, this factor operated inextricably with the use of the motorized crane to cause Olene's injury. While the chain may not have been incorporated into the design of the crane, it was used only for lifting objects in conjunction with the crane. The chain itself was useless without being used in conjunction with the motorized crane; and indeed, as respondents note, the risk of injury only existed because of the use of the motorized crane.

The motorized crane was supposed to lift the vehicle off the ground and transport it across the scrapyard. The vehicle weighed 3,500 pounds. It is impossible to imagine how 3,500 pounds could be lifted without using something that is motorized. Without the use of the motorized crane, which operated together with the chain to lift the car, Olene would not have been injured. Olene's alternative theories are implausible, too remote, and completely without factual support.

Because the injuries caused by the breaking of the chain were so intertwined with the use of the motorized crane, the motor-vehicle exclusion in respondents' homeowner's policies applies, and there is no coverage for appellant's injuries. In light of this decision, we need not reach Depositors' claim that coverage was also precluded under their business-pursuits exclusion.

**Affirmed.**