#25142, #25154-a-DG

**2010 SD 15**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

DE SMET FARM MUTUAL INSURANCE
COMPANY OF SOUTH DAKOTA,                    Plaintiff and Appellant,

  v.

GULBRANSON DEVELOPMENT
COMPANY, INC.,                              Defendant, Third-Party
                                            Plaintiff and Appellee,

v.

GARY CROON d/b/a GARY CROON
INSURANCE,                                  Third-Party Defendant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
BROOKINGS COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE DAVID R. GIENAPP
Judge
\* \* \* \*

TED L. McBRIDE of
Beardsley, Jensen and
 Von Wald, Prof. LLC
Rapid City, South Dakota                    Attorneys for plaintiff
                                            and appellant.

RICHARD J. HELSPER of
Glover & Helsper, PC
Brookings, South Dakota                     Attorneys for defendant,
                                            third-party plaintiff and
                                            appellee.

\* \* \* \*

                                            CONSIDERED ON BRIEFS
                                            ON OCTOBER 5, 2009

                                            OPINION FILED **02/17/10**

GILBERTSON, Chief Justice

[¶1.] Insurer, De Smet Farm Mutual (De Smet) brought a declaratory action against its insured claiming the language of the policy excluded coverage and a duty to defend the insured in an underlying action. De Smet filed a motion for summary judgment; its insured, Gulbranson Development Company, contended coverage existed under a theory of estoppel. The trial court granted the insured's motion in part. It determined that evidence developed in the declaratory action, not just the pleadings and record evidence in the underlying action, could be used to establish the duty to defend under the theory of estoppel. We affirm.

## FACTS

[¶2.] Sometime before October 2003, Gulbranson Development Company, Inc., (Development Company) purchased ninety acres of undeveloped land southwest of Brookings, South Dakota. Dean Gulbranson (Gulbranson) purchased the land in his capacity as an officer of Development Company to develop and subdivide the land into residential lots. In October 2003, Gulbranson asked Gary Croon, doing business as an independent insurance agent under the name of Gary Croon Insurance, to conduct a review of the property and recommend an insurance policy to cover it. Although the parties dispute for what purpose the coverage was requested, both parties agree the policy covered the ninety acres of land owned by Development Company.

[¶3.] Croon testified at deposition that Gulbranson contacted him by telephone and requested a site visit to write a policy on Gulbranson's home. Croon further testified he visited Gulbranson's home along with Mel Gross, the

underwriting and marketing supervisor for De Smet. That site visit occurred sometime in October 2003. Gulbranson, Croon, and Gross discussed insuring Gulbranson's home, the ninety acres of land, another farm property in Arlington, South Dakota, and two duplexes Gulbranson had built near his home. Croon and Gross testified that although Croon was not asked to write a policy to cover the 400-acre Arlington farm at that time, Gulbranson discussed the farm and both Gross and Croon understood that it was an active farming operation, while the ninety acres southwest of Brookings was not.

[¶4.]        Croon testified he observed two homes located east of and in the same development as Gulbranson's home. He also testified he saw two or three duplexes north of Gulbranson's home and that Gulbranson told Croon he planned on building another duplex. Croon further testified he observed paved roads in the area. Croon testified he assumed that Development Company sold off lots one at a time and then removed the land from its policy once the sale of the lot was completed. Croon based this assumption on a similar experience he had with another customer in Sioux Falls who sold undeveloped land for development by others.

[¶5.]        Gross testified he knew the legal description for the land but was unaware of the location of the land in relation to Gulbranson's home, and did not realize at the time of the site visit that Gulbranson's home was adjacent to the ninety acres. Gross further testified that based on the information shared with him during the site visit, he recommended Gulbranson purchase a farm liability policy to cover the ninety acres. Gross also assumed that once a parcel sold, Gulbranson removed it from the policy.

[¶6.]     On or about October 20, 2003, Croon returned to Gulbranson's home to have Gulbranson fill out the application for liability insurance on the ninety acres. Croon testified Gulbranson noted on the application form for the farm liability policy that the land was being developed for residential lots. He further testified he understood Gulbranson wanted property liability coverage for personal injuries such as those that might result to someone walking on Development Company's land. Despite testifying that the land in question was not being farmed at the time of the site visit, no farm machinery was stored on the property, and no farm buildings existed on the property, Croon wrote a note in Gulbranson's file: "Do we want the 90 acres liability on the farm/ranch or on the farm liability?" He explained at his deposition that the note meant he needed to ask the De Smet underwriting department whether it would be better to add the ninety acres to the farm/ranch policy covering the Arlington farm, or instead write a new farm liability policy. Croon eventually selected a farm liability policy as the appropriate type of coverage. He also testified that to his knowledge, De Smet did not sell liability coverage for development activities. Croon claimed he told Gulbranson that the policy would not cover business pursuits, but did not tell Gulbranson that he needed to look elsewhere for coverage for the development activities. He further testified he did not specifically understand that Gulbranson wanted coverage for the development activities.

[¶7.]     Gulbranson testified in his deposition he had previously insured the development land and the development activities through Harleysville Insurance Company under a commercial liability policy issued by Valley Insurance in effect

from August 25, 2000, through August 25, 2004. Gulbranson further testified he had told Valley Insurance he was developing the land for residential lots and understood the policy covered development activities. The annual premium for that policy was $1,094.00.

[¶8.] Gulbranson also testified he provided Croon with a copy of the Valley policy for his review at the time they met. He testified he "showed [Croon] what we currently had and this was what his recommendation was to purchase." He also testified that he relied "on my insurance agent to tell me what I needed to purchase because that's his expertise." Gulbranson further testified he could not recall if Croon specifically stated one way or the other whether the De Smet policy would cover the property development activities. However, he also explained the activities and construction that had already taken place made it more than apparent that the land was being developed as a business activity. Gulbranson further stated the application indicated it was a farm liability policy and contained the following question: "Are business pursuits being conducted at the premises?" He answered on the form "Land is being developed for buildings lots." Finally, Gulbranson admitted he did not read the policy in its entirety upon receipt and was unaware of the business exclusion it contained.

[¶9.] The policy issued with the following exclusion: "activities related to the **business** of the **insured**, except as provided for by an incidental Business Coverage." The policy defined "Business" as follows:

> **Business** means a trade, a profession or an occupation, all whether full or part time. This includes the rental of property to others. It does not include the occasional rental for residential

purposes of the part of the **insured premises** normally occupied solely by **your** household.

**Business** includes services regularly provided by an **insured** for the care of others and for which an **insured** is compensated. A mutual exchange of like services is not considered compensation.

**Business** does not include farming.

(Bolding in original). The policy further stated: "**We** will defend a suit seeking damages if the suit resulted from **bodily injury** or **property damages** not excluded under this coverage." (Bolding in original). The policy remained in effect until sometime in 2007 with an annual premium of approximately $200.

[¶10.] In 2003, while the policy was in effect, Development Company sold several lots and made improvements to the land for the housing development. In 2003, the City of Brookings rebuilt the street between the development and property owned by Randy Cragoe and Koryn Steen Cragoe (Cragoes). By September 2005, approximately sixty homes had been constructed in the subdivision along with the infrastructure necessary to support the subdivision. Heavy rainfall and storm runoff in September and October of 2005 allegedly caused damage to the Cragoes' home.

[¶11.] In April 2007, Cragoes filed suit against the City of Brookings and Development Company seeking monetary damages for negligence and nuisance for altering the natural and/or existing drainage and thereby forcing storm and surface waters onto Cragoes' property. Development Company tendered defense to De Smet. DeSmet declined to defend based on the business exclusion in the farm liability policy.

[¶12.]       On May 16, 2007, De Smet filed a declaratory action in which it sought a judicial determination of whether it had a duty to defend or indemnify Development Company in the underlying negligence and nuisance action brought by Cragoes. De Smet alleged that the business exclusion in the farm liability policy excluded both duties. Development Company answered De Smet's complaint and brought a counterclaim for attorney fees incurred in the Cragoes' action against it. In its counterclaim, Development Company alleged De Smet and Croon were both aware of its purpose and its business of developing the land for residential lots, and that Croon had visited the site as early as 2003 and observed the activities of Development Company. Development Company filed a third-party complaint against Croon d/b/a as Gary Croon Insurance alleging he failed to procure the requested coverage and that he had authority to bind De Smet as its agent.

[¶13.]       De Smet filed a motion for summary judgment on the declaratory action arguing it had no duty to defend because the business activities of Development Company were excluded under the unambiguous language of the policy. Croon filed a motion for summary judgment arguing he had no duty to procure a policy for Development Company's development activities. Finally, Development Company filed a motion for summary judgment on a theory of coverage by estoppel. Gulbranson stated in Development Company's supporting affidavit that he and Croon toured the property in 2003. During that tour, Croon saw the development activities, Gulbranson's home in the subdivision, and the infrastructure for the development including water, sewer, street lights, curbs, gutters, and asphalt roads. Gulbranson further attested he had relied on Croon to

procure the type of insurance necessary to defend and protect any claims against Development Company, yet Croon failed to procure the coverage for the business activities of Development Company as requested. The affidavit also alleged that Croon was De Smet's agent and Croon's negligence in failing to procure the proper liability coverage was imputed to De Smet. De Smet denied the agency relationship.

[¶14.] On August 20, 2008, after a hearing on the matter, the trial court entered an order in the declaratory action in which it denied the three motions for summary judgment. However, the trial court granted partial summary judgment on De Smet's motion concluding the duty to pay any judgment against Development Company was excluded under the language of the policy. It also granted partial summary judgment on Development Company's motion that De Smet had a duty to defend in the underlying action filed by Cragoes.

[¶15.] In its memorandum decision, the trial court determined genuine issues of material fact existed regarding Development Company's coverage by estoppel claim,* but granted partial summary judgment on the duty to defend. It based its

---

* In its memorandum opinion dated July 11, 2008, the trial court determined there were genuine issues of material fact regarding all three motions. It noted that Croon denied some of Gulbranson's testimony regarding what Croon knew or saw when he visited the land. In also noted that Gulbranson testified that he could not recall whether Croon had represented the farm liability policy would cover the development activities. The trial court determined there was a genuine issue of material fact as to whether the conduct that gave rise to the estoppel claim occurred before or at the inception of the policy as required by *Rumpza v. Larsen*, 1996 SD 87, ¶26, 551 NW2d 810, 815. Finally, the trial court identified a factual dispute regarding the exact nature of Croon's relationship with De Smet and whether

(continued . . .)

decision on the severability of the duty to defend from the duty to indemnify. The trial court framed the issue as "whether or not there is a duty to defend if there is not coverage within the complaint but the insurance carrier has independent knowledge of facts that may establish coverage." Noting that this Court had yet to consider this issue, it quoted with approval the holding from *St. Paul Mercury Ins. Co. v. Dahlberg, Inc*, 596 NW2d 674 (Minn 1999), and expressed that it felt this Court would adopt the Minnesota rule from that case. The trial court noted that *St. Paul Mercury* states that "if a complaint fails to establish coverage, an insurer still must accept tender of defense if it has independent knowledge of facts that may establish coverage[.]" Because De Smet had independent knowledge of facts relating to estoppel and agency that could establish coverage, the trial court determined that it had a duty to defend. This Court denied De Smet's subsequent petition for interlocutory appeal.

[¶16.]    In late 2008, Development Company was dismissed from the Cragoes' underlying action. It filed a motion with the trial court to compel De Smet to pay the $21,492.50 in attorney fees it incurred in that action. The trial court entered a final order in which it noted that because of Development Company's dismissal from the underlying action, the duty to defend had expired. It further stated all that remained was for De Smet to pay the attorney fees incurred by Development

---

(. . . continued)
he was its agent since Croon had the right to sell other insurers' policies but only sold De Smet policies.

Company in the underlying action. It then entered an order to that effect. De Smet

appeals from that order raising one issue:

> Whether the trial court erred when it considered facts and allegations outside the pleadings in the underlying action to determine whether De Smet was equitably estopped from denying a duty to defend a claim excluded by the language of the policy.

By notice of review, Development Company raises the following issues:

> Whether an insurance company can be estopped from asserting an exclusionary clause if it is not within the terms the insured ordered and within the coverage the insured was led to believe existed.

> Whether an insurer's independent knowledge of facts that may establish coverage requires the insurer to accept tender of defense under a theory of coverage by estoppel.

We combine the various issues into a single one:

> Did the trial court err in concluding as a matter of law under the undisputed material facts of this case that De Smet had a duty to defend Development Company in the underlying action.

## STANDARD OF REVIEW

> Summary judgment is authorized "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." We will affirm only when there are no genuine issues of material fact and the legal questions have been correctly decided. All reasonable inferences drawn from the facts must be viewed in favor of the non-moving party. The burden is on the moving party to clearly show an absence of any genuine issue of material fact and an entitlement to judgment as a matter of law.

Discover Bank v. Stanley, 2008 SD 111, ¶16, 757 NW2d 756, 761-62 (quoting

Mueller v. Cedar Shores Resort, Inc., 2002 SD 38, ¶10, 643 NW2d 56, 62). "There

must be no material facts at issue," as well as "no genuine issue on the inferences to

be drawn from those facts." *Id.* (quoting A-G-E Corp v. State, 2006 SD 66, ¶17, 719 NW2d 780, 786). Furthermore,

> [w]hile we often distinguish between the moving and non-moving party in referring to the parties' summary judgment burdens, the more precise inquiry looks to who will carry the burden of proof on the claim or defense at trial. Entry of summary judgment is mandated against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

Zephier v. Catholic Diocese of Sioux Falls, 2008 SD 56, ¶6, 752 NW2d 658, 662-63 (citing Celotex Corp. v. Catrett, 477 US 317, 322-23, 106 SCt 2548, 2552, 91 LEd2d 265, 273 (1986)).

## ANALYSIS AND DECISION

[¶17.] On appeal, De Smet contends the trial court erred when it adopted the Minnesota rule in *St. Paul Mercury*, 596 NW3d 674, and considered the factual allegations offered by Development Company in the declaratory action to support its claim of a duty to defend in the underlying action under a theory of estoppel. De Smet argues that if this Court accepts the Minnesota rule that permits consideration of facts known to the insurer in determining whether a duty to defend existed, it should limit the rule to facts within the record of the underlying action and not permit consideration by the trial court of extraneous facts supplied by the insured. It further argues that no evidentiary basis exists to support the grant of summary judgment on the duty to defend under an estoppel theory.

[¶18.] As this Court has noted before, "[t]he duty to defend is much broader than the duty to pay a judgment rendered against an insured." Hawkeye-Security Ins. Co. v. Clifford by Clifford, 366 NW2d 489, 490 (SD 1985). We place the burden

on the insurer to show there is no duty to defend. *Id.* at 492. The insurer has the burden to show the claim clearly falls outside of the policy coverages. *Id.*

[¶19.] When determining whether coverage extends to a duty to defend in an underlying action, we begin with an examination of the language of the policy and the pleadings in the underlying action. *Id.* at 491 (quoting U.S. Fid. & Guar. Co. v. Louis A. Roser Co., 585 F2d 932, 936 (8thCir 1978)). "If it is clear or arguably appears from the face of the pleadings in the action against the insured that the alleged claim, if true, falls within policy coverage, the insurer must defend." *Id.* The duty to defend will stand based on the face of the pleadings even when ambiguities exist in the pleadings that suggest a claim is both covered by the policy and not covered by the policy. *Id.* at 491-92. Even when extraneous facts available in depositions and other record evidence outside the pleadings show the claim as pleaded in the underlying action is false, groundless, or even fraudulent, the duty to defend cannot be defeated if on the face of the pleadings it indicates the claim falls within the policy coverage. *Id.*

[¶20.] Regarding whether coverage exists under a theory of estoppel, "[a]n insurance company which in its policy has written the generally broad coverage may be estopped to defend by reason of an exclusionary clause not within the terms the insured ordered and coverage which he was led to believe was contained therein." *See* Farmers Mut. Auto. Ins. Co. v. Bechard, 80 SD 237, 122 NW2d 86, 91 (1963) (citing Craig v. Nat. Cas. Co., 76 SD 349, 78 NW2d 464, 468 (1956); Flanagan v. Sunshine Mut. Ins. Co., 73 SD 256, 260, 41 NW2d 761, 763 (1950)). This Court also quoted with approval the New Jersey Supreme Court, which held:

> where an insurer or its agent misrepresents, even though innocently, the coverage of an insurance contract, or the exclusions therefrom, to an insured *before or at the inception of the contract,* and the insured reasonably relies thereupon to his ultimate detriment, the insurer is estopped to deny coverage after a loss on a risk from a peril actually not covered by the terms of the policy.

Roseth v. St. Paul Prop. and Liab. Ins. Co., 374 NW2d 105, 107 (SD 1985) (quoting Harr v. Allstate Ins. Co., 54 NJ 287, 306-07, 255 A2d 208, 219 (1969) (emphasis added)). "The conduct giving rise to estoppel must occur 'before or at the inception of the policy.'" Am. Fam. Mut. Ins. Co. v. Elliott, 523 NW2d 100, 104 (SD 1994) (quoting *Roseth*, 374 NW2d at 107). The conduct of the insurer or insured must create the belief that the policy covered the liability excluded under the language of the insurance contract. *Id*. Our cases have required either a representation by the insurer that coverage existed when it did not exist under the policy, or a failure to write the policy to include the specific coverage as ordered by the insured. *See* Rumpza v. Larson, 1996 SD 87, ¶31, 551 NW2d 810, 815.

[¶21.]     In the instant case, the pleadings in the underlying action on their face allege a complaint against Development Company by Cragoes that clearly falls within the business exclusion and outside the terms of the policy as written. Regarding the coverage issue, the trial court found that the policy exclusion was clear and unambiguous and determined that no coverage existed within the policy language for any judgment resulting from Cragoes' claim against Development Company. Thus, the trial court did not consider any extraneous facts to arrive at that conclusion.

[¶22.] However, when considering whether a duty to defend existed under a theory of coverage by estoppel, the trial court considered the following facts and evidence from the declaratory action: the deposition testimony of Croon, Gross, and Gulbranson, the policy application, the policy, and affidavits. All of this evidence was, regarding the underlying action, extraneous in nature. Gulbranson provided some of the evidence, while Croon and De Smet through its employees, Gross and Merle Walters, its claims adjustor/supervisor, provided other extraneous facts considered by the trial court.

[¶23.] As previously noted, De Smet argues that under this Court's holding in *Hawkeye-Security*, the trial court improperly considered extraneous information from the declaratory action to support the coverage by estoppel theory. De Smet argues the holding in *Hawkeye-Security* limited the trial court to considering only the pleadings in the underlying action. De Smet's reliance on *Hawkeye-Security* is misplaced for two reasons. First, the holding in *Hawkeye-Security* did not pertain to coverage under a theory of estoppel but to a determination of whether the claims pleaded fell within the policy language. 366 NW2d at 490. That holding is inapplicable to an estoppel claim in that such a claim by its nature requires the trial court to consider the conduct of the insurer at the insurance contract formation stage. *Bechard*, 80 SD 237, 122 NW2d at 91.

[¶24.] Second, in *Hawkeye-Security,* we specifically reserved for another day the question as to whether the insurer must investigate its duty to defend "or whether facts, either within or outside the record, can activate a duty to defend when the pleadings clearly do not state a covered claim." 366 NW2d at 492 n3. The

plaintiff in the underlying action is usually a stranger to the defendant's insurance policy. As such, it would be unlikely that the facts surrounding the formation of the contract for that policy would be found in the pleadings in the underlying action in which the plaintiff sued a defendant/insured.

[¶25.] Most of the cases in which this Court has considered coverage under a theory of estoppel have been direct actions between the insurer and the insured and were not tied to an underlying action as in the present case. *See Rumpza*, 1996 SD 87 ¶¶2, 7, 551 NW2d at 811-12; *Bechard*, 80 SD 237, 122 NW2d at 87. A case in which a declaratory action was filed while an underlying action was pending is *Elliott*, 523 NW2d 101. In that case, this Court reviewed the same kind of extraneous facts as the trial court did in the instant case, including the facts surrounding the contract formation. *See id.* at 104.

[¶26.] Given our precedent in this area, the trial court did not need to rely upon the Minnesota rule from *St. Paul Mercury*, 596 NW2d 674, to consider facts outside the record of the underlying action. The trial court did not need to resort to the Minnesota rule given that evidence of the insurer's and insured's conduct and expectations at the formation stage of the contract form the basis of a claim for coverage under a theory of estoppel. Nevertheless, the trial court did not err when it considered the evidence from the formation stage of the contract. Such evidence is exactly the type of fact, although extraneous to an underlying action, necessary to establish a duty to defend by estoppel in a declaratory action. To do as De Smet suggests would limit the trial court to a virtually empty evidentiary record.

[¶27.]     The undisputed facts in the record indicate that Gulbranson attempted to purchase a replacement for the Valley Insurance policy from Croon.  Gulbranson testified he showed Croon a copy of the Valley Insurance commercial general liability policy, a fact which neither Croon nor De Smet disputed.  Gulbranson testified that while he did not specifically ask for a rider or policy provision to cover the development activities, the copy of the Valley Insurance policy gave Croon notice of the type of coverage Gulbranson wanted to purchase.  Furthermore, the difference in annual premium for the Valley Insurance policy as compared to the De Smet policy also gave Croon notice that the two were not equivalents.  Finally, Croon, and not Gulbranson, selected the farm liability policy to replace the Valley Insurance commercial general liability policy, a strategy also recommended by Gross.

[¶28.]     This was not a case where the insured failed to read the policy while assuming the new policy covered the business pursuits being conducted on the property, *see Elliott*, 523 NW2d at 104, nor where the insured failed to communicate to the agent the exact type of coverage desired, *see Rumpza*, 1996 SD 87, ¶31, 551 NW2d at 816.  In this case, Gulbranson provided Croon with enough information to communicate the type of coverage Gulbranson wanted to purchase.  In response to the question on the application regarding whether business pursuits were being conducted on the premises, Gulbranson clearly responded "land is being developed for lots."  Croon claimed he relied on an erroneous assumption, based entirely on his prior experience with another customer, about how the development activities were conducted.  Based on this faulty assumption, he ordered an

insurance policy that did not provide the coverage Gulbranson wanted to replace. Neither De Smet nor Croon made a follow-up attempt to clarify the matter.

[¶29.] While it might have been inadvertent, it appears Croon failed to inform Gulbranson that the De Smet farm liability policy was not an equivalent replacement for the Valley Insurance commercial general liability policy. Gulbranson relied upon Croon's expertise and selection of the farm liability policy to his detriment. In addition, Croon's representation occurred at the formation stage of the contract. Gulbranson applied for the farm liability policy selected by Croon, disclosed the development activities conducted on the land, and because of Croon's actions, Gulbranson had a reasonable belief that the De Smet policy covered Development Company's business activities. Sufficient undisputed material facts are contained in the record to show that Croon and De Smet were aware, or should have been, of the type of coverage Gulbranson sought to replace.

[¶30.] Admittedly, questions of fact exist on the scope of the coverage, which is distinct from the duty to defend. However, because no judgment was rendered against Development Company in the underlying action, we do not need to consider those factual issues on appeal. The trial court did not err when it considered facts outside the record of the underlying action in determining whether coverage under a theory of estoppel existed. The rule in *Bechard*, 80 SD 237, 122 NW2d at 93, imputes the knowledge of Croon to De Smet for purposes of imposing a duty to defend under the theory of estoppel. Based on the foregoing facts and our settled case law that holds that the duty to defend is much broader than the duty to pay a

judgment rendered against an insured, we conclude that summary judgment in favor of Gulbranson was appropriate.

[¶31.]     Affirmed.

[¶32.]     KONENKAMP, ZINTER, MEIERHENRY, and SEVERSON, Justices, concur.