#27264-a-JMK

**2015 S.D. 97**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

| | |
|---|---|
| NORTH STAR MUTUAL INSURANCE, | Plaintiff and Appellee, |
| v. | |
| CHARLES KORZAN and MICHAEL KORZAN, | Defendants and Appellants, |
| and | |
| HENRY ROGHAIR; RAYMOND STOTTS; BORK & SONS, INC.; WEST CENTRAL COOPERATIVE, INC.; TERRY DOWLING and DAVID WEBER, | Defendants. |

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
JONES COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE MARK BARNETT
Judge

* * * *

MARCUS J. CHRISTIANSON of
Maschka, Riedy & Ries
Mankato, Minnesota                    Attorneys for plaintiff
                                      and appellee.

* * * *

CONSIDERED ON BRIEFS
ON AUGUST 31, 2015

OPINION FILED **12/16/15**

JOHN W. BURKE of
Thomas, Braun, Bernard & Burke, LLP
Rapid City, South Dakota


      and

JASON M. SMILEY of
Gunderson, Palmer, Nelson
  & Ashmore, LLP
Rapid City, South Dakota                     Attorneys for defendants
                                        and appellants.

#27264

KERN, Justice

[¶1.]      Insurance company sought declaratory judgment to determine whether an insurance policy provided coverage to insured and his brother for an incident in which a semi-trailer transporting a load of hay ignited and spread fire to nearby lands.  Insured counterclaimed for declaratory judgment.  After discovery, both parties filed cross-motions for summary judgment seeking a determination regarding insurance company's duty to defend and indemnify the insured.  The circuit court denied insured's motion for summary judgment and granted insurance company's motion finding no coverage existed under the policy.  The insured and his brother appeal.  We affirm.

## BACKGROUND

[¶2.]      On September 19, 2012, Charles Korzan and his brother, Michael Korzan, (Korzans) were moving hay bales from Charles's property in Jones County to his property in Brule County to feed livestock.  The weather and crop conditions were dangerously dry.  To transport the hay bales, Michael drove a 1998 International 9400 series semi-truck, hauling a 48-foot trailer.  Charles drove a similar semi-truck and trailer.  Charles owned both semi-trucks and trailers.  Charles drove a load of hay out of the field toward Interstate 90, a distance of about nine miles, and Michael followed in the other semi-truck which was loaded with approximately 30 round hay bales secured by straps.

[¶3.]      Prior to leaving the field, neither Charles nor Michael noticed any problems with the hay, including flames or smoke.  However, after Michael started driving, he began to feel heat on his arm through the open window and suspected a

-1-

hay bale was on fire. Charles observed the fire, called Michael on his cell phone, and advised Michael that there was a fire and he should drive to Exit 177. Charles called 911 to report the fire and asked that the fire department meet them at Exit 177. The semi-truck became inoperable due to the fire approximately three miles from the spot Charles and Michael first observed the fire, and one mile from Interstate 90. Michael was unaware that the semi-truck was spreading firebrands and sparks along either side of the road as he drove. Upon exiting the semi-truck, Michael observed fire rolling across the prairie. Neither Charles nor Michael knew what started the fire.

[¶4.] Upon responding to the scene, Fire Chief Rich Sylva observed a semi-truck with a flatbed trailer on fire and three separate fires on land along the route Michael had just driven. The fires were located near Okaton, South Dakota (Okaton Fires). It is unknown what ignited the hay; however, officials confirmed that the source of the Okaton Fires was "determined to have originated with the burning semi hauling hay." Officials eliminated all other possible causes of the fire. The fire burned fencing, hay, power poles, outbuildings, and 2,465 acres of wheat stubble and grass.

[¶5.] Henry Roghair, Raymond Stotts, and Bork & Sons, Inc., filed a lawsuit against Charles asserting claims of nuisance, negligence, trespass, and punitive damages for the Okaton Fires. Roghair and Stotts later amended their complaint to

include Michael as a defendant and add additional plaintiffs.[1]  The amendment also included a claim for wrongful entry.

[¶6.]          On February 6, 2014, Charles's insurance carrier, North Star Mutual Insurance Company (North Star), filed a separate action for declaratory judgment. North Star sought a determination as to whether it had a duty to defend and indemnify the Korzans for the Okaton Fires.  The Korzans counterclaimed for declaratory judgment, asserting North Star had a duty to defend.  After completing discovery, North Star and the Korzans filed cross-motions for summary judgment.

[¶7.]          The competing summary judgment motions centered on interpretation of a farmowners insurance policy (the Policy) issued by North Star to Charles with a policy period of February 11, 2012, through February 11, 2013.  The Policy contained Coverage L - Personal Liability (Coverage L) which provided:

> "We" pay, up to "our" "limit", all sums for which an "insured" is liable by law because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies.  "We" will defend a suit seeking damages if the suit resulted from "bodily injury" or "property damage" not excluded under this coverage.

The Policy also contained exclusions to Coverage L, including an exclusion for motorized vehicles[2] (the Motorized Vehicle Exclusion).  The Motorized Vehicle

---

1.    The additional plaintiffs include, David Weber, Brad Roghair, Shawna Roghair, Nathan Vander Schaaf, and Sherri Vander Schaaf.

2.    The Policy defined motorized vehicle as "a self-propelled land or amphibious vehicle regardless of method of surface contact."  A "motor vehicle" is defined as "a 'motorized vehicle', a trailer, or a semi-trailer, and all attached machinery or equipment, if: a. it is subject to 'motor vehicle' registration; or b. it is designed for use on public roads."

Exclusion provided:

> This policy does not apply to: . . . "bodily injury" or "property damage" which results from the ownership, operation, maintenance, use, occupancy, renting, loaning, entrusting, supervision, or "loading or unloading" of "motorized vehicles", trailers, or watercraft owned, operated, or used by or rented or loaned to an "insured".

[¶8.] North Star contended that this exclusion prohibited coverage under the Policy as the incident involved the use and operation of a motor vehicle. The Korzans countered, arguing that the exclusion did not apply because the incident involved independent acts of negligence that were "wholly separate" from the operation of the motor vehicle. The Korzans also argued that there were genuine issues of material fact regarding the cause of the fire and the acts of the Korzans which precluded summary judgment.

[¶9.] In addition to the exclusions, the Policy also contained an extension to Coverage L to pay for damages for which an insured is liable by law because of *personal injury*. This extension, referred to as the "Personal Injury Endorsement," defined personal injury as "false arrest, false imprisonment, wrongful eviction, wrongful entry, wrongful detention, malicious prosecution, misrepresentation, libel, slander, defamation of character or invasion of privacy."

[¶10.] Under this endorsement, North Star alleged that policy coverage did not extend to *wrongful entry* or *trespass* as the incident involved a fire which does not constitute a personal injury as defined in the Policy or by law. North Star argued in the alternative that even if the fire was construed to be a wrongful entry covered by the Personal Injury Endorsement, coverage would be precluded under the Motorized Vehicle Exclusion. In response, the Korzans submitted coverage was

proper as the spread of the fire was a wrongful entry which constituted a personal injury as set forth in the endorsement. The Korzans further argued that the Motorized Vehicle Exclusion did not apply to the Personal Injury Endorsement as it was not expressly reincorporated into the endorsement section of the Policy.

[¶11.] On October 23, 2014, the circuit court issued a memorandum decision denying the Korzans's motion for summary judgment and granting North Star's motion finding no coverage under the Policy. The Korzans appeal.

## STANDARD OF REVIEW

[¶12.] We review a court's denial of a motion for summary judgment under the de novo standard of review. *Titus v. Chapman*, 2004 S.D. 106, ¶ 13, 687 N.W.2d 918, 923. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." SDCL 15-6-56(c). The burden rests with the moving party to clearly demonstrate the absence of genuine issues of material fact and entitlement to judgment as a matter of law. *Titus*, 2004 S.D. 106, ¶ 13, 687 N.W.2d at 923. "All reasonable inferences drawn from the facts must be viewed in favor of the non-moving party." *De Smet Farm Mut. Ins. Co. of S.D. v. Gulbranson Dev. Co.*, 2010 S.D. 15, ¶ 16, 779 N.W.2d 148, 155.

[¶13.] "Insurance contract interpretation is [also] a question of law, reviewable de novo." *Ass Kickin Ranch, LLC v. N. Star Mut. Ins. Co.*, 2012 S.D. 73, ¶ 7, 822 N.W.2d 724, 726 (quoting *De Smet Ins. Co. of S.D. v. Gibson*, 1996 S.D.102, ¶ 5, 552 N.W.2d 98, 99). An insurer's duty to defend and its duty to indemnify are

separate and independent duties. *Hawkeye-Sec. Ins. Co. v. Clifford by Clifford*, 366 N.W.2d 489, 490 (S.D. 1985). "The duty to defend is much broader than the duty to pay a judgment rendered against the insured." *Id.* The burden rests with the insurer "to show the claim clearly falls outside of the policy coverages" and that "there is no duty to defend." *De Smet Farm Mut. Ins. Co. of S.D.*, 2010 S.D. 15, ¶ 18, 779 N.W.2d at 155. We look to the pleadings in the action and the language of the policy to determine if a duty to defend exists. *Id.* ¶ 19, 779 N.W.2d at 155. If even one claim is covered by the policy, an insurer must defend. *Biegler v. Am. Family Mut. Ins. Co.*, 2001 S.D. 13, ¶ 20, 621 N.W.2d 592, 599.

## ANALYSIS

> 1. *Whether the circuit court erred when it granted North Star's motion for summary judgment and determined that it does not have a duty to defend or indemnify the Korzans.*

[¶14.] The circuit court, finding that there were no genuine issues of material fact, denied coverage under the Policy on three grounds. First, the circuit court found that under the facts of the case the Motorized Vehicle Exclusion applied to Coverage L. Second, the circuit court found no coverage under the Personal Injury Endorsement of the Policy as the court determined that the term wrongful entry was not a personal injury and could not be construed to include property damages caused by a fire. Third, the court found that the Personal Injury Endorsement extended Coverage L and was therefore subject to the entire policy, including the Motorized Vehicle Exclusion which prevented coverage.

### a. Motorized Vehicle Exclusion

[¶15.] The Korzans first argue that the circuit court erred by finding North Star had no duty to defend in light of the Motorized Vehicle Exclusion to Coverage

L. The exclusion provided, in pertinent part, that the Policy did not apply to "'property damage' which results from the ownership, operation, maintenance, use, . . . or 'loading or unloading' of 'motorized vehicles', [or] trailers . . . ." In granting summary judgment, the circuit court noted that the pleadings contained numerous acts that directly involved the use, loading, maintenance, and operation of a motor vehicle. Citing to the allegations contained in the complaint, the circuit court listed acts in which the motor vehicle was directly involved in the Okaton Fires. The Korzans "*loaded and began hauling the hay* from Charles'[s] field *with two semi tractor-trailer trucks*"; conducted an activity that presented a risk of fire in dangerous weather conditions and continued to operate the "*truck while on fire*"; after noticing the fire coming from Michael's truck, "*continue*[d] *to operate his semi tractor-trailer truck* along the planned route"; "*dropping firebrands on either side of the road*, causing the ignition of fires along the entire distance they were traveling"; and after Michael "*abandoned the truck*, the fire ignited vegetation at that location as well." The circuit court also referred to the September 19, 2012, report of Chief Sylva, which provided in part, "[t]he major issue with the large number of burned acres was the fact that the driver kept driving after he discovered that his load was on fire. The semi spread fire for over 3 miles along both sides of the road."

[¶16.] In response, the Korzans contend that the fact that they were operating motor vehicles is not, in and of itself, determinative of the scope of coverage. The Korzans cite 9 Couch on Insurance 127.35 for the proposition that "[c]overage will often be afforded where an independent act of negligence is determined to be the cause of injury, despite the involvement of a vehicle." The

Korzans point to a number of alleged independent acts of negligence, as set forth in the underlying complaint, which they contend are nonvehicle-related and for which North Star must indemnify and defend.

[¶17.] In support of their argument, the Korzans direct our attention to several jurisdictions that have considered a motor vehicle exclusion in conjunction with independent acts of negligence. The Korzans urge this Court to adopt Minnesota's divisible concurrent cause doctrine. The divisible concurrent cause doctrine permits coverage under an insurance policy with a motorized vehicle exclusion where there are two independent causes, one vehicle-related and one nonvehicle-related. *Waseca Mut. Ins. Co. v. Noska*, 331 N.W.2d 917, 921 (Minn. 1983); *State Farm Ins. Cos. v. Seefeld*, 481 N.W.2d 62, 65 (Minn. 1992) (focusing on the actual injury or loss suffered, the court narrowed the holding in *Noska* to whether the nonvehicle related cause, "*could have* operated independent of a motor vehicle to cause the loss"); *see Midwest Family Mut. Ins. Co. v. Schmitt*, 651 N.W.2d 843, 847 (Minn. Ct. App. 2002) (narrowly interpreting the holding of *Noska* to whether the nonvehicle-related act could have caused the actual injuries or damages without the use of a motor vehicle). *See also Kalell v. Mut. Fire & Auto. Ins. Co.*, 471 N.W.2d 865, 868 (Iowa 1991) (holding a motor vehicle exclusion in a homeowners policy inapplicable "when two independent acts of negligence are alleged, one vehicle-related and one not vehicle-related, coverage is still provided . . . unless the vehicle-related negligence is the sole proximate cause of the injury").

[¶18.] In response, North Star argues that the divisible concurrent cause doctrine should not be adopted; however, even if adopted, the Korzans have not

established an independent act of negligence necessary to overcome the Motorized Vehicle Exclusion. We agree that even if we were to adopt some form of this doctrine, the Korzans could not prevail under these facts. In order for the divisible concurrent cause doctrine to apply and defeat application of the Motorized Vehicle Exclusion, the Korzans must establish that they committed at least one act of negligence that could have caused the Okaton Fires without the use of the motor vehicle. The independent acts of negligence which the Korzans claim are "entirely distinct from the use of a motor vehicle" include failing to "contain or suppress the fire" upon discovery; "negligently directing the fire [department] to meet at I-90"; failing "to properly, adequately and reasonably inspect the truck and its mechanical equipment"; negligently deciding to haul hay when "weather conditions were conducive to wildland fire"; and "negligently allowing the unauthorized and wrongful entry of fire from the Korzan truck to property" of others.

[¶19.] None of these acts are distinct from the use of a motor vehicle; rather, each act is inextricably intertwined with its use. As the *Schmitt* court stated, "the district court may consider theoretical possibilities to explain how the accident could have occurred without a motor vehicle in determining whether to apply the divisible, concurrent-cause doctrine. But if those possibilities are too remote, the doctrine will not be applied." 651 N.W.2d at 849. The Korzans have failed to put forth a viable or cognizable theory as to how any of these acts could have led to the fire without the use of the motor vehicle.

[¶20.] The Korzans also contend that the circuit court erred in granting summary judgment because what caused the hay to ignite on the semi-trailer is

unknown, which they submit creates a genuine issue of material fact. The Korzans point to an affidavit from Chief Sylva dated June 16, 2014, modifying the content of his original report in which he opined that, "[i]t is possible that whatever ignited the hay on the semi-trailer also ignited the surrounding land." The Korzans submit in their Statement of Undisputed Material Facts that they do not know how the fire started and that "Charles Korzan has been told the Okaton Fires could have been the result of exhaust, lightning or static electricity."

[¶21.] Other than speculation, the Korzans have not presented any factual cause for the fire and its spread other than the semi-truck being driven down the road with a flaming load of hay dropping sparks and firebrands as it traveled. Mere speculation and general assertions, without some concrete evidence, are not enough to avoid summary judgment. *Stern Oil Co. v. Brown*, 2012 S.D. 56, ¶ 8, 817 N.W.2d 395, 398 (quoting *Tolle v. Lev*, 2011 S.D. 65, ¶ 8, 804 N.W.2d 440, 444).

[¶22.] Upon our independent review of the record, we find that the circuit court correctly determined that no genuine issues of material fact exist to prevent application of the Motorized Vehicle Exclusion. The language of the Exclusion is clear and unambiguous. It precludes coverage as the property damage from the Okaton Fires resulted from the ownership, operation, use, supervision or loading or unloading of a motorized vehicle or trailer. Even if we were to adopt and apply the divisible concurrent cause doctrine, each of the alleged independent acts of negligence necessarily arose from the use of the motor vehicle and could not have operated independently of the semi-truck to cause the actual injuries that occurred. As the circuit court aptly stated, "[w]hen and how the Korzans operated that truck

are part, parcel, and the essence of the underlying action. No truck, no fire, no lawsuit." The circuit court correctly determined that the Motorized Vehicle Exclusion applied to Coverage L.

### b. Personal Injury Endorsement

[¶23.]     The Personal Injury Endorsement defined personal injury as any one of eleven listed tortious acts including wrongful entry. The Korzans contend that the Okaton Fires constitute a wrongful entry. They submit that the Okaton Fires were also a trespass upon the land because the plain meaning of the term trespass is synonymous to wrongful entry. The Korzans cite to Black's Law Dictionary's definition of trespass[3] as well as several cases outside of our jurisdiction which have found trespass and wrongful entry to be synonymous. The Korzans then point to *Chudy v. Larkin* for the proposition that fire can trespass upon the land of another. 27 S.D. 86, 129 N.W. 755 (1911) (affirming a judgment for damages in a complaint for "trespass for injury to the premises" caused when a fire set by defendant, escaped to plaintiff's property).

[¶24.]     North Star, agrees that the Policy provides coverage for personal injuries including wrongful entry; however, North Star argues the fire was not a wrongful entry. North Star argues that wrongful entry in the context of the Policy is limited to an offense against a person, not property damage, and does not include trespass, which is not the equivalent of wrongful entry.

---

3.     "An unlawful act committed against the person or property of another; esp., wrongful entry on another's real property." *Black's Law Dictionary* 1642 (9th ed. 2009).

[¶25.] The term wrongful entry is undefined in the Policy and has not been defined by this Court or by statute. We decline to address this issue, however, as even if the Okaton Fires were determined to be a wrongful entry covered under the Personal Injury Endorsement, coverage is excluded by the Motorized Vehicle Exclusion.

              c. Extension of Motorized Vehicle Exclusion to Personal Injury Endorsement

[¶26.] The Korzans argue that the Motorized Vehicle Exclusion of Coverage L does not extend to the Personal Injury Endorsement because the exclusion is not expressly reincorporated or directly included in the endorsement. By this argument, the Korzans necessarily contend the endorsement is separate from the rest of the Policy and provides stand-alone coverage. The Korzans's argument is contrary to well-established law and the plain language of the Policy.

> Endorsements or riders on a policy become a part of the policy, and must be construed with it. Such provisions in the body of the policy are not to be abrogated, waived, limited, or modified by the provisions of an endorsement or rider unless expressly stated therein that such provisions are substituted for those in the body of the policy, or unless the provisions in the policy proper and in the rider or endorsement are conflicting.

*Pete Lien & Sons, Inc. v. First Am. Title Ins. Co.*, 478 N.W.2d 824, 827 (S.D. 1991) (quoting 13A J. Appleman Insurance Law and Practice § 7538 (1976)).

[¶27.] "The existence of the rights and obligations of parties to an insurance contact [sic] are determined by the language of the contract, which must be construed according to the plain meaning of its terms." *Biegler*, 2001 S.D. 13, ¶ 20, 621 N.W.2d at 598-99. Coverage L provided coverage for bodily injury or property damage covered by the Policy. The Personal Injury Endorsement began with the

-12-

statement that "this endorsement changes the policy." The endorsement then extended the coverage to include personal injury as defined in the Policy, including injury for wrongful entry. The Personal Injury Endorsement specifically stated, "Coverage L is extended to pay for damages for which an 'insured' is liable by law because of 'personal injury'." It is undisputed that Coverage L included the Motorized Vehicle Exclusion. Therefore, even if the Okaton Fires were classified as a personal injury by wrongful entry, the Motorized Vehicle Exclusion applies to preclude coverage.

[¶28.] If an insurer attempts to apply a policy exclusion to avoid coverage, the burden rests with the insurer to prove such exclusion applies. *Ass Kickin Ranch, LLC*, 2012 S.D. 73, ¶ 9, 822 N.W.2d at 727. North Star has met this burden as the Personal Injury Endorsement is subject to the Motorized Vehicle Exclusion.

> 2. *Whether the circuit court erred when it denied the Korzans's motion for summary judgment and determined that North Star does not have a duty to defend or indemnify the Korzans.*

[¶29.] As set forth above, North Star has established that the claims asserted against the Korzans clearly fall outside of the Policy's coverage. North Star has no duty to defend or indemnify the Korzans. The circuit court did not err by granting summary judgment to North Star and denying the Korzans's cross motion for summary judgment.

## CONCLUSION

[¶30.] We hold that the Motorized Vehicle Exclusion, which applies to both Coverage L and the Personal Injury Endorsement, precludes coverage under the Policy. Accordingly, we affirm the circuit court's grant of North Star's motion for summary judgment.

#27264

[¶31.] GILBERTSON, Chief Justice, and ZINTER, SEVERSON, and WILBUR, Justices, concur.