#26291-a-DG

**2012 S.D. 73**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

ASS KICKIN RANCH, LLC,     Plaintiff and Appellant,

  v.

NORTH STAR MUTUAL
INSURANCE COMPANY,     Defendant and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
HUGHES COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE MARK BARNETT
Judge

\* \* \* \*

LEE C. "KIT" McCAHREN of
Olinger, Lovald, McCahren
  & Reimers, PC
Pierre, South Dakota     Attorneys for plaintiff
           and appellant.


DOUGLAS A. ABRAHAM of
May, Adam, Gerdes, Thompson, LLP
Pierre, South Dakota     Attorneys for defendant
           and appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
ON AUGUST 27, 2012

OPINION FILED **10/17/12**

#26291

GILBERTSON, Chief Justice

[¶1.] North Star Mutual Insurance Company (North Star) denied coverage for two unassembled wind turbines that were destroyed in a fire on Ass Kickin Ranch's property. North Star claimed a policy exclusion permitted it to deny coverage for the loss. Ass Kickin Ranch (Ranch) sued North Star, asserting North Star committed a breach of contract and acted in bad faith in denying coverage for the unassembled wind turbines. The parties filed cross-motions for summary judgment. The circuit court granted North Star's motion for summary judgment, finding the policy exclusion applied. Ranch appealed. We affirm.

**FACTS**

[¶2.] Ranch purchased an insurance policy from North Star in 2009. This insurance policy included coverage for unscheduled farm personal property from November 14, 2009, to November 14, 2010. On March 31, 2010, the shop building on Ranch's property burned down. The building and its contents were destroyed in the fire. The contents of the building included the complete set of unassembled parts for two electric generating wind turbines.

[¶3.] The unassembled wind turbines were purchased by Ranch with a check which indicated on the memo line that the payment was for "2 windmills." Each of the unassembled wind turbines consisted of a tower, a generator, a transmission, blades, and controls. The wind turbines had never been assembled or installed on Ranch's property prior to being destroyed. In order to complete installation, Ranch would have needed to pour cement footings to support the

assembled wind turbines and then connect the assembled wind turbines to a power source.

[¶4.] Ranch made a $100,000 claim on its insurance policy to recover for its loss of the unassembled wind turbines. However, North Star denied Ranch's claim, concluding coverage for the unassembled wind turbines was expressly excluded by the policy. Under Coverage F, subparagraph 5(g), the policy excluded coverage for "fences, windmills, windchargers, or their towers."

[¶5.] In February 2011, Ranch sued North Star alleging breach of contract for North Star's failure to pay Ranch's $100,000 claim. Further, Ranch sought an award of punitive damages based on its allegation that North Star acted in bad faith by failing to properly evaluate Ranch's claim.[1] The parties filed cross-motions for summary judgment. After a hearing, the circuit court granted North Star's motion for summary judgment, finding the policy exclusion applied. The circuit court's rationale for granting North Star's motion was set forth in its order and memorandum decision. Ranch appeals, arguing the circuit court erred in denying its motion for summary judgment and in granting summary judgment in favor of North Star.

## STANDARD OF REVIEW

[¶6.] When reviewing a circuit court's grant of summary judgment, this Court only decides "whether genuine issues of material fact exist and whether the

---

1. Ranch's allegations of bad faith and its request for punitive damages were not addressed by Ranch in its brief. As a result, this issue is waived on appeal.

law was correctly applied." *Zephier v. Catholic Diocese of Sioux Falls*, 2008 S.D. 56, ¶ 6, 752 N.W.2d 658, 662 (quoting *Bordeaux v. Shannon Cnty. Sch.*, 2005 S.D. 117, ¶ 11, 707 N.W.2d 123, 126). "With the material facts undisputed, [this Court's] review is limited to determining whether the trial court correctly applied the law." *De Smet Ins. Co. of S.D. v. Gibson*, 1996 S.D. 102, ¶ 5, 552 N.W.2d 98, 99. If there is any legal basis to support the circuit court's decision, the case will be affirmed on appeal. *Bozied v. City of Brookings*, 2001 S.D. 150, ¶ 8, 638 N.W.2d 264, 268.

[¶7.] "Insurance contract interpretation is a question of law, reviewable de novo." *Gibson*, 1996 S.D. 102, ¶ 5, 552 N.W.2d at 99 (citing *State Farm Mut. Auto. Ins. Co. v. Vostad*, 520 N.W.2d 273, 275 (S.D. 1994)). "This includes determining whether an insurance contract is ambiguous." *Roden v. Gen. Cas. Co. of Wis.*, 2003 S.D. 130, ¶ 6, 671 N.W.2d 622, 625 (quoting *Nat'l Sun Indus., Inc. v. S.D. Farm Bureau Ins. Co.*, 1999 S.D. 63, ¶ 7, 596 N.W.2d 45, 46).

## ANALYSIS AND DECISION

[¶8.] Neither party argues there is a genuine issue of material fact. Instead, the main issue addressed by the parties is whether the policy exclusion applies to the circumstances of this case. The parties dispute whether the unassembled wind turbines fit within the policy's exclusion of coverage for "fences, windmills, windchargers, or their towers." This is a question of contract interpretation. As a result, the only question before this Court on appeal is whether the circuit court correctly applied the law.

[¶9.] "[T]he scope of coverage of an insurance policy is determined from the contractual intent and the objectives of the parties as expressed in the contract."

*St. Paul Fire & Marine Ins. Co. v. Schilling*, 520 N.W.2d 884, 887 (S.D. 1994).

"When an insurer seeks to invoke a policy exclusion as a means of avoiding coverage, the insurer has the burden of proving that the exclusion applies." *Opperman v. Heritage Mut. Ins. Co.*, 1997 S.D. 85, ¶ 4, 566 N.W.2d 487, 489 (quoting *Am. Family Mut. Ins. Co. v. Purdy*, 483 N.W.2d 197, 199 (S.D. 1992)).

> Where the provisions of an insurance policy are fairly susceptible to different interpretations, the interpretation most favorable to the insured should be adopted. [However,] [t]his rule of liberal construction in favor of the insured and strictly against the insurer applies only where the language of the insurance contract is ambiguous and susceptible of more than one interpretation. . . .

*Nat'l Sun Indus.*, 1999 S.D. 63, ¶ 18, 596 N.W.2d at 48-49. "The fact that the parties differ as to the contract's interpretation does not create an ambiguity." *Zochert v. Nat'l Farmers Union Prop. & Cas. Co.*, 1998 S.D. 34, ¶ 5, 576 N.W.2d 531, 532 (citing *Alverson v. Nw. Nat'l Cas. Co.*, 1997 S.D. 9, ¶ 8, 559 N.W.2d 234, 235).

[¶10.] Further, a court may not "seek out a strained or unusual meaning for the benefit of the insured." *Rumpza v. Donalar Enters., Inc.*, 1998 S.D. 79, ¶ 12, 581 N.W.2d 517, 521 (quoting *Olson v. U.S. Fid. & Guar. Co.*, 1996 S.D. 66, ¶ 6, 549 N.W.2d 199, 200). Instead, "[a]n insurance contract's language must be construed according to its plain and ordinary meaning and a court cannot make a forced construction or a new contract for the parties." *Stene v. State Farm Mut. Auto. Ins. Co.*, 1998 S.D. 95, ¶ 14, 583 N.W.2d 399, 402 (alteration in original) (quoting *Schilling*, 520 N.W.2d at 887). Essentially, this means that when the terms of an insurance policy are unambiguous, these terms "cannot be enlarged or diminished by judicial construction." *Am. Family Mut. Ins. v. Elliot*, 523 N.W.2d 100, 102 (S.D. 1994) (citing *O'Neill v. Blue Cross of W. Iowa & S.D.*, 366 N.W.2d 816, 818 (S.D.

1985)).  Finally, "insurance policies must be subject to a reasonable interpretation and not one that amounts to an absurdity." *Prokop v. N. Star Mut. Ins. Co.*, 457 N.W.2d 862, 864 (S.D. 1990) (citing *Helmboldt v. LeMars Mut. Ins. Co., Inc.*, 404 N.W.2d 55, 59 (S.D. 1987)).

[¶11.]    In this case, the parties do not expressly assert the language of the policy exclusion is ambiguous.  Nevertheless, each party argues for a different interpretation of the policy exclusion.  North Star argues the policy language excluding coverage for "fences, windmills, windchargers, or their towers" encompasses all windmills and windchargers, regardless of whether or not they are assembled, unassembled, functional, or nonfunctional.  In contrast, Ranch argues an unassembled wind turbine does not fit within the language of the policy exclusion.  According to Ranch, a "pile of parts" that has never been assembled on the property does not constitute a windmill or a windcharger for purposes of the policy exclusion.  However, although North Star and Ranch interpret the policy language differently, this does not automatically render the policy exclusion ambiguous.

[¶12.]    Because North Star's policy did not provide definitions for the terms within the policy exclusion, the circuit court properly relied on definitions from Merriam-Webster's online dictionary as the plain and ordinary meanings of the terms.  The circuit court noted that according to Merriam-Webster's, a "windmill" was defined as "a mill or machine operated by the wind usually acting on oblique vanes or sails that radiate from a horizontal shaft; *especially*: a wind-driven water

pump or electric generator." Additionally, a "windcharger" was defined as "a generator driven by a windmill and used to charge storage batteries."

[¶13.] Ranch argues the unassembled wind turbines were not encompassed within these definitions because the unassembled wind turbines have never been capable of "spinning in the wind," generating power, or charging storage batteries at Ranch. However, the plain and ordinary meanings of "windmill" and "windcharger" include Ranch's unassembled wind turbines for several reasons. First, Ranch acknowledged it purchased the wind turbines with the intent to use them to generate electricity on the ranch. Thus, Ranch's intended purpose for the unassembled wind turbines fits within the plain and ordinary meanings of "windmill" and "windcharger." Next, the components of the unassembled wind turbines (towers, generators, transmissions, blades, and controls) are encompassed within the plain and ordinary meanings of "windmill" and "windcharger" because the components were designed to function as "windmills" and "windchargers" upon assembly.

[¶14.] Further, Ranch's unassembled wind turbines consisted of the components needed to create functioning "windmills" and "windchargers." Ranch possessed towers, generators, transmissions, blades, and controls. The only additional elements needed to allow Ranch's unassembled wind turbines to operate as "windmills" and "windchargers" were cement footings and a power source. Thus, although Ranch's wind turbines were unassembled, they were generally recognizable as "windmills" or "windchargers" because their components constituted the parts required for their assembly and operation.

[¶15.]    Finally, on the memo line of the check Ranch wrote to pay for the unassembled wind turbines, Ranch indicated the check was written to pay for "2 windmills." This notation is significant because it demonstrates Ranch understood the unassembled wind turbines were windmills even though they were not yet assembled and operating. Overall, the combination of Ranch's intended purpose for the unassembled wind turbines, the intended function of the unassembled wind turbine components, Ranch's understanding that the unassembled wind turbines were windmills, and the fact that the unassembled wind turbines consisted of the components needed to create functioning "windmills" and "windchargers" supports the circuit court's determination that the unassembled wind turbines were included within the plain and ordinary meanings of "windmill" and "windcharger." As a result, the circuit court did not "incorrectly apply the law" in finding that the policy exclusion was unambiguous and that the plain and ordinary meanings of "windmill" and "windcharger" encompassed Ranch's unassembled wind turbines.

[¶16.]    Ranch further claims North Star should have added language to the existing policy exclusion to explicitly exclude "all parts or components" if it meant for the policy exclusion to apply to the unassembled wind turbines. However, there is no indication in the policy that North Star meant to exclude "fences, windmills, windchargers, or their towers" from coverage only if they were assembled and operating. By using the policy exclusion's existing language without any language of limitation, North Star demonstrated its intent for the terms used in the policy exclusion to be construed broadly. Essentially, North Star's use of general terms like "windmill" without language of limitation indicated it meant for the policy

exclusion to apply to all windmills, regardless of whether or not they were fully assembled and operating.[2] Furthermore, as previously demonstrated above, the plain and ordinary meanings of "windmill" and "windcharger" encompass the unassembled wind turbines. Therefore, adding "all parts or components" language to the existing policy exclusion was unnecessary because the terms used in the policy exclusion already encompassed the unassembled wind turbines in this case.

[¶17.]     Next, consideration of the implications of Ranch's proposed interpretation of the policy exclusion provides additional support for the circuit court's determination that the unassembled wind turbines were included within the terms "windmill" and "windcharger." Concluding that the policy exclusion for "fences, windmills, windchargers, or their towers" is inapplicable to the unassembled wind turbines solely because they are not fully assembled and operating strains the meaning of the policy exclusion and diminishes the significance of its terms. As previously discussed, an analysis of the plain and ordinary meanings of "windmill" and "windcharger" establishes the policy exclusion applies to the unassembled wind turbines. Therefore, finding coverage for Ranch by limiting the policy exclusion's application to fully assembled and operating "windmills" and "windchargers" improperly strains the meaning of the policy

---

2.     In this case, the unassembled wind turbines consisted of all of the parts necessary for operation of a windmill. There may be cases where all necessary parts are not present or where some part of the unit is non-operational such as a car with a blown engine. Whether in those instances the disputed item falls within a definition in an insurance policy we leave for another day.

exclusion and diminishes the reach of its terms because this interpretation ignores the plain and ordinary meaning of the policy exclusion.

[¶18.]    Furthermore, the implementation of Ranch's proposed interpretation of the policy exclusion could lead to absurd results.  For example, as the circuit court emphasized, "an insured, who is faced with an imminent destructive tornado, could remove the steering wheel from his or her sports car and suddenly the insured would have coverage for his or her previously excluded sports car because it was not fully assembled at the time of its destruction."

[¶19.]    Ranch attempts to distinguish the circuit court's hypothetical from this case by asserting that unlike removing one part from an assembled and functioning vehicle, the unassembled wind turbines had never been assembled or capable of operating on Ranch's property.  However, although the circuit court's hypothetical presents an extreme situation, it still demonstrates how Ranch's proposed interpretation of the policy exclusion could lead to absurd results.  Therefore, the circuit court's rejection of Ranch's proposed interpretation of the policy was not an "incorrect application of the law" because such an interpretation would have diminished the language of the policy exclusion, strained the policy exclusion's meaning, and resulted in absurdity.

[¶20.]    Finally, due to the absence of controlling precedent on this issue in South Dakota, the circuit court found the Appellate Court of Connecticut's determination in *Robertson v. Nationwide Mutual Insurance Co.*, 569 A.2d 565 (Conn. App. Ct. 1990), to be persuasive in its consideration of whether to grant summary judgment in favor of North Star.  In *Robertson*, the plaintiff sued the

insurance company to recover benefits under his homeowner's insurance policy for the loss of a disassembled 1957 Gull Wing Mercedes he kept in his garage. *Id.* 569 A.2d at 565. The insurance company denied coverage, claiming the disassembled car was excluded from coverage under the policy exclusion for "motorized land vehicles . . . designed for travel on public roads as subject to motor vehicle registration." *Id.* 569 A.2d at 566.

[¶21.] The plaintiff asserted the policy exclusion did not apply to his disassembled car. *Id.* The appellate court affirmed the lower court's determination that the policy exclusion was unambiguous, the disassembled car was a motor vehicle, and the policy exclusion applied. *Id.* The court concluded the disassembled car was designed for highway travel and would be subject to vehicle registration upon assembly. *Id.* Therefore, the car met the definition of "motor vehicle" despite being disassembled. *Id.*

[¶22.] Similar to the plaintiff's assertion in *Robertson* that the policy exclusion for "motor vehicles" did not encompass a disassembled car, in this case Ranch attempts to avoid application of the policy exclusion by claiming the terms "windmill" and "windcharger" do not include unassembled wind turbines. Additionally, like in *Robertson* where the court determined a disassembled car was still a "motor vehicle" because it was designed for and capable of highway travel upon assembly, in this case Ranch's unassembled wind turbines were designed to function as "windmills" and "wind chargers" and were capable of operating as such. As a result, the Connecticut court's rationale in *Robertson* provides further support for the circuit court's conclusion that the unassembled wind turbines were

"windmills" and "windchargers" subject to North Star's policy exclusion, and that North Star was thus excused from providing coverage for Ranch's unassembled wind turbines.

**CONCLUSION**

[¶23.]     The circuit court correctly applied the law in determining Ranch's unassembled wind turbines were precluded from coverage under North Star's policy exclusion for "fences, windmills, windchargers, or their towers." The language of the policy exclusion was unambiguous and the plain and ordinary meanings of "windmill" and "windcharger" encompassed the unassembled wind turbines. As a result, the circuit court did not err in granting North Star's motion for summary judgment. Affirmed.

[¶24.]     KONENKAMP, ZINTER, SEVERSON, and WILBUR, Justices, concur.