#28160-a-GAS
**2017 S.D. 56**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellant,

v.

WAYFAIR INC.,
OVERSTOCK.COM, INC.,
and NEWEGG INC.,                          Defendants and Appellees.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
HUGHES COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE MARK W. BARNETT
Judge

* * * *

MARTY J. JACKLEY
Attorney General

RICHARD M. WILLIAMS
Deputy Attorney General

KIRSTEN E. JASPER
Assistant Attorney General
Pierre, South Dakota

ANDREW L. FERGEL
Chief Legal Counsel
 Department of Revenue
Pierre, South Dakota

ARGUED AUGUST 29, 2017
OPINION FILED 09/13/17

RONALD A. PARSONS, JR. of
Johnson, Janklow, Abdallah,
  Reiter & Parsons, LLP
Sioux Falls, South Dakota

ERIC F. CITRON of
Goldstein & Russell, PC
Bethesda, Maryland                Attorneys for plaintiff
                                 and appellant.


GEORGE S. ISAACSON
MARTIN I. EISENSTEIN
MATTHEW P. SCHAEFER of
Brann & Isaacson
Lewiston, Maine

JEFF BRATKIEWICZ
KATHRYN J. HOSKINS of
Bangs, McCullen, Butler, Foye & Simmons, LLP
Sioux Falls, South Dakota         Attorneys for defendants
                                 and appellees.

SEVERSON, Justice

[¶1.] South Dakota has no state income tax and relies on retail sales and use taxes for much of its revenue. Pursuant to state statute, sales tax is generally collected by sellers selling merchandise in this state at the point of sale and is remitted to the state by those sellers. SDCL 10-45-27.3.[1] Decisions from the United States Supreme Court interpreting the Commerce Clause of the United States Constitution prohibit the State of South Dakota from imposing this collection obligation on sellers with no physical presence in the state. As Internet sales by these sellers have risen, state revenues have decreased. Faced with declining revenues, the 2016 South Dakota Legislature passed legislation extending the obligation to collect and remit sales tax to sellers with no physical presence in the state. S.B. 106, 2016 Legis. Assemb., 91st Sess. § 1 (S.D. 2016).[2] The Legislature specifically passed the legislation to challenge the Supreme Court's Commerce Clause decisions. *Id.* § 8. Pursuant to the legislation, the State of South Dakota commenced a declaratory judgment action in circuit court seeking a declaration that

---

1. SDCL 10-45-27.3 provides in relevant part:

    > Any person who holds a license issued pursuant to this chapter or who is a person whose receipts are subject to the tax imposed by this chapter shall, except as otherwise provided in this section, file a return, and pay any tax due, to the Department of Revenue on or before the twentieth day of the month following each monthly period. The return shall be filed on forms prescribed and furnished by the department.

2. A complete copy of the certified bill, S.B. 106, is attached to this decision as Appendix 1.

certain Internet sellers (Sellers)[3] with no physical presence in the state must comply with the requirements of the 2016 legislation. *Id.* § 2. Sellers moved for summary judgment. Adhering to Supreme Court precedent, the circuit court granted the motion, entered judgment for Sellers, and enjoined the State from enforcing the 2016 legislation. The State appeals. We affirm.

## Facts and Procedural History

[¶2.] Generally, sellers selling merchandise in South Dakota have an obligation to collect and remit sales tax on each transaction to the Department of Revenue. SDCL 10-45-27.3. However, the applicability of this requirement to sellers with no physical presence in a state has been limited by the Supreme Court's interpretations of the Commerce Clause since at least 1967. The Commerce Clause generally grants "exclusive authority [to] Congress to regulate trade between the States[.]" *Nat'l Bellas Hess, Inc. v. Dep't of Rev. of the St. of Ill.*, 386 U. S. 753, 756, 87 S. Ct. 1389, 1391, 18 L. Ed. 2d 505 (1967).[4] In 1967, the Supreme Court held that the Commerce Clause prohibited Illinois from requiring a mail order seller in

---

3.      Wayfair Inc., Overstock.com, Inc., and Newegg Inc.

4.      The Commerce Clause provides in full:

> The Congress shall have Power
>
> * * *
>
> 3.      To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes[.]

U.S. Const. art. I, § 8, cl. 3.

#28160

Missouri to collect and remit use tax[5] to Illinois for merchandise sold and shipped into that state. The seller had no physical presence in Illinois, and its only contacts with that state were by mail or common carrier.[6] The Court reasoned that exposing

---

5. Sales and use tax are often complementary. In the recent case *Direct Marketing Association v. Brohl*, __ U.S. __, 135 S. Ct. 1124, 1127, 191 L. Ed. 2d 97 (2015), Justice Thomas explained:

> Like many States, Colorado has a complementary sales-and-use tax regime. Colorado imposes both a 2.9 percent tax on the sale of tangible personal property within the State and an equivalent use tax for any property stored, used, or consumed in Colorado on which a sales tax was not paid to a retailer.

(Internal citations omitted.)

South Dakota uses a similar system. SDCL 10-46-2 (imposing an excise tax equal to the sales tax on the use of tangible personal property in the State).

6. The seller's lack of a "physical presence" in Illinois was explained with reference to the following factors:

> [Seller] does not maintain in Illinois any office, distribution house, sales house, warehouse or any other place of business; it does not have in Illinois any agent, salesman, canvasser, solicitor or other type of representative to sell or take orders, to deliver merchandise, to accept payments, or to service merchandise it sells; it does not own any tangible property, real or personal, in Illinois; it has no telephone listing in Illinois and it has not advertised its merchandise for sale in newspapers, on billboards, or by radio or television in Illinois.

> All of the contacts which [Seller] does have with the State are via the United States mail or common carrier. Twice a year catalogues are mailed to the company's active or

(continued . . . )

-3-

#28160

the seller's interstate business to local "variations in rates of tax . . . and record-keeping requirements" would violate the purpose of the Commerce Clause "to ensure a national economy free from . . . unjustifiable local entanglements." *Id.* at 759-60, 87 S. Ct. at 1393. The Court concluded that "[u]nder the Constitution, this [was] a domain where Congress alone [had] the power of regulation and control." *Id.*[7]

_____

(. . . continued)

> recent customers throughout the Nation, including Illinois. This mailing is supplemented by advertising 'flyers' which are occasionally mailed to past and potential customers. Orders for merchandise are mailed by the customers to [Seller] and are accepted at its Missouri plant. The ordered goods are then sent to the customers either by mail or by common carrier.

*Bellas Hess*, 386 U.S. at 754, 87 S. Ct. at 1390 (quoting *Dep't of Rev. v. Nat'l Bellas Hess, Inc.*, 214 N.E.2d 755, 757 (Ill. 1966)).

7.    *Bellas Hess* was a product of what the Supreme Court refers to as "the 'negative' or 'dormant' Commerce Clause[.]" *Quill Corp. v. North Dakota,* 504 U.S. 298, 309, 112 S. Ct. 1904, 1911, 119 L. Ed. 2d 91 (1992) (quoting P. Hartman, *Federal Limitations on State and Local Taxation* §§ 2:9—2:17 (1981)). Although the Commerce Clause provides a "positive grant of power to Congress," it carries a negative component "prohibiting States from . . . imposing excessive burdens on interstate commerce without congressional approval[.]" *Comptroller of the Treas. of Md. v. Wynne*, __ U.S. __, __, 135 S. Ct. 1787, 1794, 191 L. Ed. 2d 813 (2015). This prohibition exists because "one of the chief evils that led to the adoption of the Constitution [was] . . . state tariffs and other laws that burdened interstate commerce." *Id.* Thus, the Supreme Court interprets the negative or dormant Commerce Clause as precluding states from imposing taxes "which discriminate[ ] against interstate commerce . . . by providing a direct commercial advantage to local business, or by subjecting interstate commerce to the burden of 'multiple taxation.'" *Id.* (quoting *Nw. States Portland Cement Co. v. Minn.*, 358 U. S. 450, 458, 79 S. Ct. 357, 362, 3 L. Ed. 2d 421 (1959)).

[¶3.]     In 1992, the Supreme Court, while limiting application of its due process analysis, reaffirmed *Bellas Hess's* Commerce Clause limitations in *Quill Corp. v. North Dakota,* 504 U.S. 298, 112 S. Ct. 1904, 119 L. Ed. 2d 91 (1992).  In that case, the Court held that a mail-order house with no physical presence in North Dakota could not be required to collect and remit use tax to that state for "property purchased for storage, use, or consumption within the State."  *Id.* at 302, 112 S. Ct. at 1908.  Despite later developments in its Commerce Clause jurisprudence, the Court adhered to the "bright-line rule" of *Bellas Hess* on the basis that it "encourage[d] settled expectations and . . . foster[ed] investment by businesses and individuals."  *Id.* at 316, 112 S. Ct. at 1915.

[¶4.]     In 2015, the Supreme Court reviewed a Colorado law that instead of imposing the obligation to collect and remit use tax on sellers with no physical presence in that state, imposed the obligation "to notify . . . customers of their use-tax liability and to report" sales information back to the state.  *Direct Marketing,* __ U.S. at __, 135 S. Ct. at 1127.  The issue before the Supreme Court was whether the United States District Court had jurisdiction under the Tax Injunction Act (28 U.S.C. § 1341) over a suit challenging the new law on Commerce Clause grounds. Justice Kennedy, however, took the opportunity to write a concurrence questioning the advisability of continuing to follow *Bellas Hess* and *Quill* in light of later Commerce Clause jurisprudence and "in view of the dramatic technological and social changes that [have] taken place in our increasingly interconnected economy." *Id.* at __, 135 S. Ct. at 1135 (Kennedy, J., concurring).  Despite noting the "startling revenue shortfall in many States" due to *Bellas Hess* and *Quill*, Justice Kennedy

observed that *Direct Marketing* did not raise reconsideration of those decisions "in a manner appropriate for the Court to address it." *Id.* Nevertheless, he concluded that *Direct Marketing* provided "the means to note the importance of reconsidering doubtful authority." *Id.* He invited "[t]he legal system [to] find an appropriate case for [the Supreme] Court to reexamine *Quill* and *Bellas Hess.*" *Id.*

[¶5.] With this legal backdrop, the South Dakota Legislature began its 2016 session concerned with its ability to maintain state revenue in the face of increasing Internet sales and their effect on sales tax collections.[8] Senate Bill 106 was introduced during the session as: "An Act to provide for the collection of sales taxes from certain remote sellers, to establish certain Legislative findings, and to declare an emergency." S.B. 106, 2016 Legis. Assemb., 91st Sess. (S.D. 2016). The Act provided that any sellers of "tangible personal property" in South Dakota without a "physical presence in the state . . . shall remit" sales tax according to the same procedures as sellers with "a physical presence[.]" *Id.* § 1. However, the Act limited this obligation to sellers with "gross revenue" from sales in South Dakota of over $100,000 per calendar year or with 200 or more "separate transactions" in the state within the same time frame. *Id.* §§ 1-2. The Act authorized the State to bring a declaratory judgment action in circuit court against any person believed to meet the Act's criteria "to establish that the obligation to remit sales tax is applicable and valid under state and federal law." *Id.* § 2. The Act further authorized a motion to dismiss or a motion for summary judgment in the action. *Id.* It also provided that

---

8. South Dakota must maintain a balanced budget. *See* S.D. Const. art. XII, § 7.

the filing of the action "operates as an injunction during the pendency of the" suit prohibiting the State from enforcing the Act's obligations. *Id.* § 3. Other sections of the Act prohibited retroactive application of the obligation to remit sales tax and made the obligation prospective only from the date of dissolution or lifting of an injunction provided for by the Act. *Id.* §§ 5-6.

[¶6.] In addition to these provisions, the Act contained an emergency clause declaring it "necessary for the support of the state government" and making it effective "on the first day of the first month" falling at least fifteen days after signing by the Governor. *Id.* § 9.[9] The Act's emergency clause made a two-thirds majority vote in both houses of the Legislature necessary for it to pass. S.D. Const. art. III, § 22.

[¶7.] Senate Bill 106 was introduced in the South Dakota Senate and referred for a hearing by the Senate State Affairs Committee. S. Journal, 91st Sess., 150 (S.D. 2016). The hearing was held on February 17, 2016. *Id.* at 316. Several witnesses testified in open committee in support of the bill, including a representative of the Governor's Office.[10] There was no opposition. *Hearing I, supra* note 9. The bill passed out of committee with a do pass recommendation and

---

9. Most legislation is effective "on the first day of July after its passage[.]" SDCL 2-14-16.

10. *An Act to provide for the collection of sales taxes from certain remote sellers, to establish certain Legislative findings, and to declare an emergency: Hearing on S.B. 106 Before the S. Comm. on State Affairs,* 2016 Legis. Assemb., 91st Sess. 2:27 (S.D. 2016), http://sdlegislature.gov/Legislative_Session/Bills/Bill.aspx?Bill=106&Session =2016 [*Hearing I*].

was debated and considered on the floor of the Senate on February 19, 2016. S.

Journal at 319, 370. The bill passed the Senate on a vote of thirty-three yeas and

zero nays. S. Journal at 370.

[¶8.]    The bill had its first reading in the South Dakota House of

Representatives on February 22, 2016, and was referred for a hearing by the House

State Affairs Committee. H. Journal, 91st Sess., 621 (S.D. 2016). The hearing was

held on February 29, 2016. *Id.* at 710. Once again, several witnesses testified in

open committee in support of the bill.[11] Again, there was no opposition. *Hearing II*,

*supra* note 10. The bill passed out of the House committee with a do pass

recommendation. H. Journal at 710. It was debated and considered on the House

floor on March 1, 2016. *Id.* at 740. The bill passed by a vote of sixty-four yeas and

two nays. *Id.* The Governor signed the bill on March 22, 2016. S. Journal at 619.

It fulfilled the two-thirds vote requirement for the emergency clause and took effect

on May 1, 2016. *Id.*; S.B. 106, § 9.

[¶9.]    Shortly after the Governor signed Senate Bill 106 into law, the South

Dakota Department of Revenue began issuing written notices to sellers it believed

met the requirements of Senate Bill 106. The notices: informed the sellers of the

passage of the law; explained its requirements; advised the sellers to register for

South Dakota sales tax licenses by a date certain; and warned that the failure to

---

11.    *An Act to provide for the collection of sales taxes from certain remote sellers, to establish certain Legislative findings, and to declare an emergency: Hearing on S.B. 106 Before the H. Comm. on State Affairs*, 2016 Legis. Assemb., 91st Sess. 1:00 (S.D. 2016), http://sdlegislature.gov/Legislative_Session/Bills/Bill.aspx?Bill=106&Session=2016 [*Hearing II*].

register could result in a declaratory judgment action as authorized by the law. Although the three sellers in this appeal, as well as a fourth seller, Systemax Inc., received notices, they did not register for sales tax licenses. The State filed a declaratory judgment action against Sellers in circuit court on April 28, 2016. The State sought a judicial declaration that the requirements of Senate Bill 106 were valid and applicable to Sellers, an order enjoining enforcement of the law during the pendency of the action, and an injunction requiring Sellers to register for licenses to collect and remit sales tax.[12]

[¶10.]     Following service of the State's complaint, Systemax Inc. voluntarily registered for a sales tax license and immediately began collecting taxes under the law. Therefore, the State dismissed Systemax from its lawsuit on May 19, 2016. The remaining sellers then sought to remove the State's action to the United States District Court for South Dakota on the basis of federal question jurisdiction. The District Court rejected removal and remanded the case to the South Dakota circuit court in January 2017.

[¶11.]     After the District Court's remand, Sellers filed a joint answer, motion for summary judgment, and statement of material facts admitting: each lacked a physical presence in South Dakota; each met the sales and transaction

---

12.     Along with its complaint, the State filed a separate application for a preliminary injunction noting that the law provided for an injunction against its enforcement during the pendency of a suit under the law. *See* S.B. 106, § 3.

requirements for application of Senate Bill 106;[13] and none were registered to collect South Dakota sales tax. As an affirmative defense, Sellers raised the unconstitutionality of Senate Bill 106 under the Commerce Clause. The State filed a response to the motion for summary judgement agreeing with Sellers' statement of material facts. The State further agreed that the court would have to grant Sellers' motion for summary judgment based upon *Bellas Hess* and *Quill* and indicated its intention to pursue review of the issue by the United States Supreme Court.

[¶12.] The circuit court did not hold a hearing. It entered its decision based on undisputed statements of material fact and the parties' briefs. As part of its decision, the court noted that the parties agreed that no hearing was necessary. The court found no material issue of fact in dispute over Sellers' lack of a physical presence in South Dakota. Observing its obligation to adhere to Supreme Court precedent prohibiting the imposition of an obligation to collect and remit sales tax on sellers with no physical presence in the State, the court granted Sellers' motion for summary judgment. It enjoined the State from enforcing the obligation to collect and remit sales tax against Sellers. The State filed a timely notice of appeal of the court's order granting summary judgment.

---

13.     Sales of personal property for delivery into South Dakota exceeding $100,000 and 200 or more separate transaction in the previous calendar year. *See* S.B. 106, § 1.

## Issue

**Whether the circuit court erred in granting summary judgment to Sellers.**

## Standard of Review

[¶13.]     We review a summary judgment de novo. *Heitmann v. Am. Fam. Mut. Ins. Co.*, 2016 S.D. 51, ¶ 8, 883 N.W.2d 506, 508 (citing *Ass Kickin Ranch, LLC v. N. Star Mut. Ins. Co.*, 2012 S.D. 73, ¶ 7, 822 N.W.2d 724, 726). We determine whether there are any "genuine issues of material fact" in the case and "whether the law was correctly applied." *Id.* (quoting *Ass Kickin Ranch*, 2012 S.D. 73, ¶ 6, 822 N.W.2d at 726). If there are no genuine issues of material fact, "our 'review is limited to determining whether the [circuit] court correctly applied the law.'" *Id.*

## Analysis and Decision

[¶14.]     Sellers argue that there is an inadequate record for this Court's review in this matter. But Sellers moved for summary judgment and by doing so, limited the record available for review. *See* SDCL 15-6-56(c) (limiting the record on a motion for summary judgment to "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any[.]"). In any event, the material facts are not in dispute. The parties agreed that each seller had a principal place of business outside of South Dakota and each lacked a physical presence in this state. The parties agreed that in the previous calendar year, each seller had gross revenue from the sale of tangible personal property in South Dakota in excess of $100,000 and/or sold tangible personal property in the state in 200 or more separate transactions. The parties agreed that none of the sellers were registered to collect South Dakota sales tax.

[¶15.]     In view of these undisputed facts and the Supreme Court's holdings in *Bellas Hess* and *Quill*, Senate Bill 106 could not impose a valid obligation on Sellers to collect and remit sales tax to this State because none of them had a physical presence in the state. *See Bellas Hess*, 386 U.S. at 758-60, 87 S. Ct. at 1392-93 (rejecting imposition of "the duty of use tax collection and payment upon a seller" with no physical presence in the taxing state); *Quill*, 504 U.S. at 317-18, 112 S. Ct. at 1916 (reaffirming *Bellas Hess's* Commerce Clause limitations in rejecting a state's attempt to require a seller with no physical presence in the state to collect and pay use tax for goods sold in the state). We see no distinction between the collection obligations invalidated in *Quill* and those imposed by Senate Bill 106, and hold that the circuit court correctly applied the law when it granted Sellers' motion for summary judgment.

[¶16.]     Nonetheless, the State argues that the Supreme Court should reconsider *Bellas Hess* and *Quill*. It claims that in bringing this suit, the State has accepted Justice Kennedy's invitation in *Direct Marketing* for "[t]he legal system [to] find an appropriate case for [the Supreme] Court to reexamine" those decisions. __ U.S. at __, 135 S. Ct. at 1135 (Kennedy, J., concurring). According to the State, circumstances have changed since *Bellas Hess* and *Quill*, making *Bellas Hess* and *Quill* outdated. The State emphasizes that computer technology and software have advanced, South Dakota has streamlined its revenue laws, and the retail industry has evolved. The State also claims that the Supreme Court's application of the physical presence requirement to the collection of sales tax differs from its

application of other Commerce Clause requirements to similar collection obligations. This has led to inconsistent results.

[¶17.]     In his concurrence in *Direct Marketing*, Justice Kennedy recognized many of the State's arguments supporting reconsideration of *Bellas Hess* and *Quill*. *See* __ U.S. at __, 135 S. Ct. at 1134 (Kennedy, J., concurring). Some of them go as far back as Justice Fortas's original dissent in *Bellas Hess* and Justice White's concurrence and dissent in *Quill*. *See* 386 U.S. at 760, 87 S. Ct. at 1393 (Fortas, J., dissenting); 504 U.S. at 321, 112 S. Ct. at 1916 (White, J., concurring in part and dissenting in part). Before joining the Supreme Court, Justice Gorsuch, while acknowledging Supreme Court precedent binding on lower courts, also raised similar concerns with *Bellas Hess* and *Quill*. *See Direct Mktg. Ass'n v. Brohl*, 814 F.3d 1129, 1147 (10th Cir. 2016) (Gorsuch, Circuit Judge, concurring).

[¶18.]     However persuasive the State's arguments on the merits of revisiting the issue, *Quill* has not been overruled. *Quill* remains the controlling precedent on the issue of Commerce Clause limitations on interstate collection of sales and use taxes. We are mindful of the Supreme Court's directive to follow its precedent when it "has direct application in a case" and to leave to that Court "the prerogative of overruling its own decisions." *Rodriguez de Quijas v. Shearson/American Exp., Inc.*, 490 U.S. 477, 484, 109 S. Ct. 1917, 1921-22, 104 L. Ed. 2d 526 (1989). Therefore, we affirm.

[¶19.]     GILBERTSON, Chief Justice, and ZINTER and KERN, Justices, and WILBUR, Retired Justice, concur.

# State of South Dakota



## OFFICE OF THE SECRETARY OF STATE

Department of State

United States of America, ☐

☐     Secretary's Office

State of South Dakota ☐

This is to certify that the attached instrument of writing is a true, correct and examined copy of Senate Bill 0106 in our office as filed March 22, 2016;



IN TESTIMONY WHEREOF, I have hereunto set my hand and caused to be affixed the Great Seal of the state of South Dakota at the city of Pierre, the capital, this day April 18, 2016.

*Shantel Krebs*

Shantel Krebs
Secretary of State

# State of South Dakota



## OFFICE OF THE SECRETARY OF STATE

Department of State

United States of America, }

State of South Dakota }

SECRETARY'S OFFICE

This is to certify that the attached instrument of writing is a true, correct and examined copy of SB 0106 duly passed in the Legislature of the State of South Dakota, as an Emergency Act, and has been carefully compared with the original now on file in this office and found correct.



**IN TESTIMONY WHEREOF,** I have hereunto set my hand and caused to be affixed the Great Seal of the State of South Dakota at the City of Pierre, the Capital, on March 22, 2016.

Shantel Krebs, Secretary of State

# AN ACT

ENTITLED, An Act to provide for the collection of sales taxes from certain remote sellers, to establish certain Legislative findings, and to declare an emergency.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF SOUTH DAKOTA:

Section 1. That the code be amended by adding a NEW SECTION to read:

Notwithstanding any other provision of law, any seller selling tangible personal property, products transferred electronically, or services for delivery into South Dakota, who does not have a physical presence in the state, is subject to chapters 10-45 and 10-52, shall remit the sales tax and shall follow all applicable procedures and requirements of law as if the seller had a physical presence in the state, provided the seller meets either of the following criteria in the previous calendar year or the current calendar year:

(1)     The seller's gross revenue from the sale of tangible personal property, any product transferred electronically, or services delivered into South Dakota exceeds one hundred thousand dollars; or

(2)     The seller sold tangible personal property, any product transferred electronically, or services for delivery into South Dakota in two hundred or more separate transactions.

Section 2. That the code be amended by adding a NEW SECTION to read:

Notwithstanding any other provision of law, and whether or not the state initiates an audit or other tax collection procedure, the state may bring a declaratory judgment action under chapter 21-24 in any circuit court against any person the state believes meets the criteria of section 1 of this Act to establish that the obligation to remit sales tax is applicable and valid under state and federal law. The circuit court shall act on this declaratory judgment action as expeditiously as possible and this action shall proceed with priority over any other action presenting the same question in any other venue.

In this action, the court shall presume that the matter may be fully resolved through a motion to

dismiss or a motion for summary judgment. However, if these motions do not resolve the action, any discovery allowed by the court may not exceed the provisions of subdivisions 15-6-73(2) and (4).

The provisions of § 10-59-34, along with any other provisions authorizing attorney's fees, do not apply to any action brought pursuant to this Act or any appeal from any action brought pursuant to this Act.

Section 3. That the code be amended by adding a NEW SECTION to read:

The filing of the declaratory judgment action established in this Act by the state operates as an injunction during the pendency of the action, applicable to each state entity, prohibiting any state entity from enforcing the obligation in section 1 of this Act against any taxpayer who does not affirmatively consent or otherwise remit the sales tax on a voluntary basis. The injunction does not apply if there is a previous judgment from a court establishing the validity of the obligation in section 1 of this Act with respect to the particular taxpayer.

Section 4. That the code be amended by adding a NEW SECTION to read:

Any appeal from the decision with respect to the cause of action established by this Act may only be made to the state Supreme Court. The appeal shall be heard as expeditiously as possible.

Section 5. That the code be amended by adding a NEW SECTION to read:

No obligation to remit the sales tax required by this Act may be applied retroactively.

Section 6. That the code be amended by adding a NEW SECTION to read:

If an injunction provided by this Act is lifted or dissolved, in general or with respect to a specific taxpayer, the state shall assess and apply the obligation established in section 1 of this Act from that date forward with respect to any taxpayer covered by the injunction.

Section 7. That the code be amended by adding a NEW SECTION to read:

A taxpayer complying with this Act, voluntarily or otherwise, may only seek a recovery of taxes,

penalties, or interest by following the recovery procedures established pursuant to chapter 10-59. However, no claim may be granted on the basis that the taxpayer lacked a physical presence in the state and complied with this Act voluntarily while covered by the injunction provided in section 3 of this Act.

Nothing in this Act limits the ability of any taxpayer to obtain a refund for any other reason, including a mistake of fact or mathematical miscalculation of the applicable tax.

No seller who remits sales tax voluntarily or otherwise under this Act is liable to a purchaser who claims that the sales tax has been over-collected because a provision of this Act is later deemed unlawful.

Nothing in this Act affects the obligation of any purchaser from this state to remit use tax as to any applicable transaction in which the seller does not collect and remit or remit an offsetting sales tax.

Section 8. That the code be amended by adding a NEW SECTION to read:

The Legislature finds that:

(1)     The inability to effectively collect the sales or use tax from remote sellers who deliver tangible personal property, products transferred electronically, or services directly into South Dakota is seriously eroding the sales tax base of this state, causing revenue losses and imminent harm to this state through the loss of critical funding for state and local services;

(2)     The harm from the loss of revenue is especially serious in South Dakota because the state has no income tax, and sales and use tax revenues are essential in funding state and local services;

(3)     Despite the fact that a use tax is owed on tangible personal property, any product transferred electronically, or services delivered for use in this state, many remote sellers



actively market sales as tax free or no sales tax transactions;

(4)     The structural advantages of remote sellers, including the absence of point-of-sale tax collection, along with the general growth of online retail, make clear that further erosion of this state's sales tax base is likely in the near future;

(5)     Remote sellers who make a substantial number of deliveries into or have large gross revenues from South Dakota benefit extensively from this state's market, including the economy generally, as well as state infrastructure;

(6)     In contrast with the expanding harms caused to the state from this exemption of sales tax collection duties for remote sellers, the costs of that collection have fallen. Given modern computing and software options, it is neither unusually difficult nor burdensome for remote sellers to collect and remit sales taxes associated with sales into South Dakota;

(7)     As Justice Kennedy recently recognized in his concurrence in *Direct Marketing Association v. Brohl*, the Supreme Court of the United States should reconsider its doctrine that prevents states from requiring remote sellers to collect sales tax, and as the foregoing findings make clear, this argument has grown stronger, and the cause more urgent, with time;

(8)     Given the urgent need for the Supreme Court of the United States to reconsider this doctrine, it is necessary for this state to pass this law clarifying its immediate intent to require collection of sales taxes by remote sellers, and permitting the most expeditious possible review of the constitutionality of this law;

(9)     Expeditious review is necessary and appropriate because, while it may be reasonable notwithstanding this law for remote sellers to continue to refuse to collect the sales tax in light of existing federal constitutional doctrine, any such refusal causes imminent harm to this state;

(10) At the same time, the Legislature recognizes that the enactment of this law places remote sellers in a complicated position, precisely because existing constitutional doctrine calls this law into question. Accordingly, the Legislature intends to clarify that the obligations created by this law would be appropriately stayed by the courts until the constitutionality of this law has been clearly established by a binding judgment, including, for example, a decision from the Supreme Court of the United States abrogating its existing doctrine, or a final judgment applicable to a particular taxpayer; and

(11) It is the intent of the Legislature to apply South Dakota's sales and use tax obligations to the limit of federal and state constitutional doctrines, and to thereby clarify that South Dakota law permits the state to immediately argue in any litigation that such constitutional doctrine should be changed to permit the collection obligations of this Act.

Section 9. Whereas, this Act is necessary for the support of the state government and its existing public institutions, an emergency is hereby declared to exist. This Act shall be in full force and effect on the first day of the first month that is at least fifteen calendar days from the date this Act is signed by the Governor.

An Act to provide for the collection of sales taxes from certain remote sellers, to establish certain Legislative findings, and to declare an emergency.

I certify that the attached Act originated in the

SENATE as Bill No. 106

_Kuy Johnson_
Secretary of the Senate

_[signature]_
President of the Senate

Attest:

_Kuy. Johnson_
Secretary of the Senate

_[signature]_
Speaker of the House

Attest:

_[signature]_
Chief Clerk

Senate Bill No. 106
File No. ____
Chapter No. _____

Received at this Executive Office this _8th_ day of _March_,
20_16_ at _9:20 A_ M.

By _Judip Swartz_
for the Governor

The attached Act is hereby approved this _22nd_ day of _March_, A.D., 20_16_

_Dennis Daugaard_
Governor

STATE OF SOUTH DAKOTA,

ss.

Office of the Secretary of State

Filed _March 22nd_, 20_16_ at _11:4a_ o'clock _A_ M.

_Shantel Krebs_
Secretary of State

By _____
Asst. Secretary of State