#30216-a-PJD
**2023 S.D. 61**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,                                        Plaintiff and Appellee,


        v.


MIKE GRUNEWALDT, NANCY
GRUNEWALDT, MIKE and NANCY
GRUNEWALDT d/b/a GRUNEWALDT
ANGUS and BERNIE, LLC,                                    Defendants and Appellants,


        and


AGTEGRA COOPERATIVE,                                     Defendant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FIFTH JUDICIAL CIRCUIT
SPINK COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE TONY L. PORTRA
Judge

\* \* \* \*

ZACHARY W. PETERSON of
Richardson, Wyly, Wise,
    Sauck & Hieb, LLP
Aberdeen, South Dakota                   Attorneys for defendants and
                                         appellants.

\* \* \* \*

CONSIDERED ON BRIEFS
AUGUST 29, 2023
OPINION FILED **11/29/23**

* * * *

HILARY L. WILLIAMSON
TIERNEY C. SCOBLIC of
Fuller, Williamson, Nelson
   & Preheim, LLP
Sioux Falls, South Dakota
Attorneys for plaintiff and
appellee.

#30216

DEVANEY, Justice

[¶1.] Agtegra Cooperative (Agtegra) brought suit against Mike and Nancy Grunewaldt, alleging the Grunewaldts delivered wheat contaminated with fertilizer to its elevator and are therefore liable to Agtegra for associated damages. The Grunewaldts' insurance company, State Farm Mutual Automobile Insurance Company, commenced a separate lawsuit seeking a declaration that it had no duty to defend or indemnify the Grunewaldts or pay any judgment arising from the allegations in the underlying suit by Agtegra. State Farm filed a motion for summary judgment, and after a hearing, the circuit court granted the motion. The Grunewaldts appeal. We affirm.

## Factual and Procedural Background

[¶2.] The following undisputed facts are derived from the pleadings in the record and the allegations set forth in Agtegra's complaint against the Grunewaldts. The Grunewaldts operate a farm near Miranda, South Dakota. On October 15 and 16, 2019, Mike delivered two loads of wheat to Agtegra's elevator in Redfield, South Dakota. Agtegra alleges that the wheat delivered was contaminated with fertilizer and that it was dumped into a bin containing approximately 400,000 bushels of wheat. According to Agtegra, it "was able to segregate and sell the contaminated wheat but received considerably less for it than" it "would have received for uncontaminated wheat."

[¶3.] Agtegra brought suit against the Grunewaldts for breach of the implied warranty of merchantability, breach of the implied warranty of fitness for a particular purpose, breach of contract, breach of the covenant of good faith and fair

-1-

dealing, fraudulent concealment, and negligence. In its complaint, Agtegra alleges that because Mike had done business with Agtegra for more than twenty years and was familiar with Agtegra's delivery terms and conditions and delivery notices, the Grunewaldts were "aware of [Agtegra's] inability to accept seed or grain contaminated with pesticides or other foreign substances, including fertilizer." Agtegra sought damages in excess of $325,000 from the Grunewaldts for loss of income, expenses for increased labor and costs, loss of use of the bin, and other expenses.

[¶4.] The Grunewaldts are insured by State Farm. Their automobile insurance policy provides liability coverage up to $100,000, subject to conditions and exclusions within the policy. In State Farm's separate suit seeking a declaratory judgment that it has no duty to defend or indemnify the Grunewaldts in the lawsuit initiated by Agtegra, it argued that Agtegra's claims are excluded from the policy's coverage terms.

[¶5.] State Farm filed a motion for summary judgment with a supporting brief and statement of undisputed facts setting forth the terms of the insurance policy and the allegations in Agtegra's complaint. The circuit court held a hearing on November 22, 2022, and at the conclusion of the hearing, granted summary judgment, determining that State Farm has no duty to defend or indemnify the Grunewaldts. Relying on this Court's ruling in *South Dakota State Cement Plant Commission v. Wausau Underwriters Insurance Company* (*Wausau*), 2000 S.D. 116, 616 N.W.2d 397, the court determined that the policy's pollution exclusion provisions clearly preclude coverage for Agtegra's claims against the Grunewaldts.

[¶6.] The Grunewaldts appeal, asserting that the circuit court erred by ruling that State Farm's pollution exclusions bar coverage for Agtegra's property damage claim against the Grunewaldts and that State Farm thus has no duty to defend or indemnify.

**Standard of Review**

[¶7.] This Court's standard of review on summary judgment is well-settled. "We affirm the circuit court 'when there are no genuine issues of material fact and the legal questions have been correctly decided.'" *Culhane v. W. Nat'l Mut. Ins. Co.*, 2005 S.D. 97, ¶ 5, 704 N.W.2d 287, 289 (quoting *Sanford v. Sanford*, 2005 S.D. 34, ¶ 11, 694 N.W.2d 283, 287). The interpretation of an insurance contract is a question of law reviewed de novo with no deference to the circuit court. *N. Star Mut. Ins. v. Korzan*, 2015 S.D. 97, ¶ 13, 873 N.W.2d 57, 61 (citing *Ass Kickin Ranch, LLC v. N. Star Mut. Ins. Co.*, 2012 S.D. 73, ¶ 7, 822 N.W.2d 724, 726).

**Analysis and Decision**

[¶8.] "To determine whether the insurer has a duty to defend, we must *only* look to the complaint and other record evidence to determine whether the alleged claim, *if true*, falls within the policy coverage." *Wausau*, 2000 S.D. 116, ¶ 22, 616 N.W.2d at 406; *Korzan*, 2015 S.D. 97, ¶ 13, 873 N.W.2d at 61 (citing *De Smet Farm Mut. Ins. Co. of S.D. v. Gulbranson Dev. Co., Inc.*, 2010 S.D. 15, ¶ 19, 779 N.W.2d 148, 155 (considering the pleadings in the underlying action and the language of the policy when determining whether there is a duty to defend)).

[¶9.] Under the text of the automobile policy at issue here, State Farm agreed to pay damages an insured becomes legally liable to pay because of: (a)

"*bodily injury* to others;" and (b) "damage to property caused by an accident that involves a vehicle for which that *insured* is provided Liability Coverage by this policy." The policy contains the following relevant coverage exclusions:

> (5) There is no coverage for an *insured* for *bodily injury* or property damage caused by *pollutants* that:
>
> > (a) Are transported by;
> > (b) Are carried in or upon;
> > (c) Are released, discharged, or removed from; or
> > (d) Escape or leak from any motor vehicle.
>
> (6) There is no coverage for an insured for any claim made or lawsuit filed by any person, organization, or governmental body against that insured for damages, response costs, or similar costs, or any related remedial action that are:
>
> > (a) the real or alleged result of the effects of pollutants; or
> > (b) in any way associated with the cost of:
> > > (i) cleanup;
> > > (ii) removal;
> > > (iii) containment; or
> > > (iv) neutralization of the effects of pollutants.
>
> Exclusions (5) and (6) above do not apply if the bodily injury or property damage is the direct, accidental, and instantaneous result of a collision which arises out of the use of any vehicle as a motor vehicle for which that insured is provided Liability Coverage by this policy.

The policy defines "pollutants" as "any solid, liquid or gaseous irritant or contaminant, toxic substance, hazardous substance, or oil in any form."

[¶10.]     "The burden rests with the insurer 'to show the claim clearly falls outside of the policy coverages' and that 'there is no duty to defend.'" *Korzan*, 2015 S.D. 97, ¶ 13, 873 N.W.2d at 61 (quoting *De Smet Farm Mut. Ins.*, 2010 S.D. 15, ¶ 18, 779 N.W.2d at 155); *accord Wausau*, 2000 S.D. 116, ¶ 15, 616 N.W.2d at 402 (citing *N. Star Mut. Ins. Co. v. Kneen*, 484 N.W.2d 908, 912 (S.D. 1992)). "[I]f it

'arguably appears from the face of the pleadings in the action that the alleged claim, if true, falls within the policy coverage, the insurer must defend.'" *Wausau*, 2000 S.D. 116, ¶ 15, 616 N.W.2d at 402 (quoting *Hawkeye-Sec. Ins. Co. v. Clifford*, 366 N.W.2d 489, 491 (S.D. 1985)).  In the event "doubt exists whether the claim against the insured arguably falls within the policy coverage, such doubts must be resolved in favor of the insured." *Id.* (citation omitted).

[¶11.]     Here, the Grunewaldts' alleged delivery of contaminated wheat to Agtegra's elevator forms the basis of all six causes of action in Agtegra's complaint. To support their contention that State Farm has a duty to defend them against Agtegra's claims, the Grunewaldts start with several guiding principles this Court has applied when interpreting insurance contracts.

[¶12.]     The Grunewaldts note that under SDCL 58-11-39, "[e]very insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended, or modified by any rider, endorsement, or application lawfully made a part of the policy."  They further note that when considering terms designed to limit coverage, this Court applies a strict interpretation.  *Novak v. State Farm Mut. Auto. Ins. Co.*, 293 N.W.2d 452, 455 (S.D. 1980) (providing that "if the clause in question is one of exclusion or exception, designed to limit the protection, a strict interpretation is applied").  Finally, they note that if there is a "genuine uncertainty as to which of two or more meanings is correct, the policy is ambiguous" and any ambiguities in the policy must be resolved in favor of the insured.  *Larimer v. Am. Fam. Mut. Ins. Co.*, 2019 S.D. 21, ¶ 9, 926 N.W.2d 472, 475–76 (citation omitted).

[¶13.]    Relying on these principles, the Grunewaldts present two arguments that, in their view, establish State Farm has a duty to defend them against Agtegra's claims. First, they argue that pollution exclusions are meant to limit an insurer's liability for *environmental* damage and then claim that Agtegra's complaint does not allege this type of damage. Second, they argue that if the policy exclusions "can be read broadly enough to encompass the claims in Agtegra's [c]omplaint," the exclusions are ambiguous because they are susceptible to multiple meanings and, thus, should be resolved in favor of coverage.

[¶14.]    As to their first argument, the Grunewaldts rely on the Court's statement in *Wausau* that the "purpose of a pollution exclusion clause is 'to limit liability for environmental damage.'" 2000 S.D. 116, ¶ 17, 616 N.W.2d at 405 (referring to the intent of such clauses being the exclusion of coverage for "pollution and contamination of the environment, be it land, water, or the atmosphere" (citation omitted)). They then contend that although the Court in *Wausau* ultimately determined that a similar pollution exclusion barred coverage in that case, the facts alleged in *Wausau* were much different than those alleged by Agtegra here. In particular, they contend that "[d]elivering wheat that contained foreign substances and, therefore, did not qualify for 'food grade use' is quite a measure different from spewing cement dust or other recognized pollutants into the environment."[1]

---

1.    Even if the pollution exclusion clause was interpreted to apply only to environmental pollution, the Grunewaldts have not offered a definition of this phrase to support their claim that contaminated wheat would *not* be environmental pollution. While not dispositive, the Court in *Wausau* noted

(continued . . .)

[¶15.]     The Grunewaldts' reliance on these isolated references to environmental pollution in the *Wausau* opinion to support a narrow interpretation of the pollution exclusions here is misplaced.  This Court's determination that there was no coverage under the policy in *Wausau* did not hinge on whether the emission of cement dust was a form of environmental pollution.  In fact, the Court declined to decide whether cement dust was a pollutant.  *Id.* ¶ 22, 616 N.W.2d at 406.  Instead, the Court determined that because the causes of action in the complaint at issue were based on alleged "contamination" and the term "pollutants" as used in the pollution exclusion was defined to include "contaminants," the claims clearly fell within the policy exclusion.  *Id.* ¶ 23.

[¶16.]     Like the exclusion in *Wausau*, State Farm's pollution exclusions and corresponding definitions do not use the term "environmental."  Therefore, if this Court interpreted the policy to exclude coverage only for damages related to *environmental* pollution, we would be rewriting the terms of the policy.  As noted in *Wausau*, this Court cannot rewrite an insurance policy or add to its language.  *Id.* ¶ 24, 616 N.W.2d at 407.

---

(. . . continued)

> that because "cement dust is governmentally regulated" and the cement plant had received notice of a violation of state environmental statutes and regulations, "[t]o argue that cement dust is not a pollutant faced with government regulation on the substance appears to be a specious argument at best."  2000 S.D. 116, ¶ 23 n.4, 616 N.W.2d at 406 n.4.  Agtegra has similarly referred to governmental regulations in support of its claim that the pollution exclusion applies to grain contaminated with pesticide or other foreign substances that otherwise was intended to be used for food.  In particular, it has alleged that the Grunewaldts had notice that such contaminated grain would be subject to seizure by the FDA and to citations pursuant to applicable FDA rules and regulations.

[¶17.]     The Grunewaldts nevertheless assert that coverage exists because, as stated in their second argument, the terms used in State Farm's policy exclusions should be deemed ambiguous as applied to Agtegra's claims. They contend that although State Farm argues for a broad interpretation of the exclusion provisions, the provisions are equally as susceptible to a narrow interpretation because State Farm's use of "terms of art" typically associated with environmental pollution (for example, references to pollutants being "released" or "discharged" or those that "escape" or "leak from" a vehicle) could lead a reasonable insured to believe that the policy only excludes coverage for damages associated with environmental pollution.[2]

[¶18.]     However, rather than interpreting the terms of an insurance policy as "terms of art," our rules of insurance contract interpretation require us to interpret the language of the policy according to its plain and ordinary meaning. *W. Agric. Ins. Co. v. Arbab-Azzein*, 2020 S.D. 12, ¶ 11, 940 N.W.2d 865, 868. Moreover, this Court has declined to apply a narrow, technical definition to a term when there is nothing in the insurance contract supporting such a limited interpretation. *In re Certification of a Question of L. from U.S. Dist. Ct., D.S.D., Cent. Div.*, 2021 S.D. 35, ¶¶ 17, 19, 960 N.W.2d 829, 835.

[¶19.]     Further, even if an insured could interpret some of the terms in State Farm's policy differently, the mere "fact that the parties differ as to the contract's

---

2.     The Grunewaldts also argue that the reference in exclusion (6) to lawsuits filed by organizations and governmental bodies suggests or implies that only coverage for environmental pollution was intended to be excluded. But this ignores other language in this provision stating that "there is no coverage for an insured for *any* claim made or lawsuit filed by *any person*, organization, or governmental body . . . ." (Emphasis added.)

interpretation does not create an ambiguity." *See Ass Kickin Ranch*, 2012 S.D. 73, ¶ 9, 833 N.W.2d at 727 (citation omitted). "[W]hen the terms of an insurance policy are unambiguous, these terms 'cannot be enlarged or diminished by judicial construction.'" *Id.* ¶ 10 (citation omitted).

[¶20.]    Relevant to Agtegra's claims here, State Farm's policy states, in exclusion (5), that there is no coverage for property damage caused by "pollutants" that are "transported by," "carried in," or "removed from" any vehicle. Exclusion (6) states that there is no coverage for damages that result from "the effects of pollutants" or costs associated with the "cleanup," "removal," or "containment . . . of pollutants." The policy's definition of "pollutants" includes "*any* solid, liquid or gaseous irritant or *contaminant*, toxic substance, hazardous substance, or oil in any form." (Emphasis added.)

[¶21.]    Agtegra's underlying complaint alleges the Grunewaldts transported and delivered wheat contaminated with fertilizer, causing the value of the wheat in the bin in which it was placed to be "adversely impacted" and requiring increased labor and costs to segregate and separately sell the contaminated wheat. When applying the plain and ordinary meaning of State Farm's policy terms here, the exclusions unambiguously bar coverage.

[¶22.]    When addressing a similarly worded definition of "pollutant" as used in the insurance policy's exclusions in *Wausau*, this Court concluded: "Because the causes of action in the complaint are based upon alleged 'contamination,' assuming that the allegations that [the insured] caused contamination are true, no coverage would apply and Wausau would not have a duty to defend because the causes of

action in the complaint all clearly fall within the definition of pollution in the pollution exclusion clause." 2000 S.D. 116, ¶ 24, 616 N.W.2d at 407. For the same reasons, State Farm's pollution exclusions clearly bar coverage here.

[¶23.] The Grunewaldts urge this Court to take a different approach. They ask that we refrain from focusing solely on the use of the term "contaminant" in Agtegra's complaint "without regard to all the facts alleged" and the other language in the exclusions. They argue that applying "a purely literal interpretation" of the term contaminant "would stretch the limited meaning of the pollutant exclusions to things having nothing to do with environmental pollution." They further note that other courts interpreting similar exclusions have interpreted them more narrowly because of this concern. *See, e.g.*, *Nautilus Ins. Co. v. Jabar*, 188 F.3d 27, 31 (1st Cir. 1999) (determining pollution exclusion did not apply to claims alleging exposure to hazardous fumes discharged by products used to repair a roof because "[w]ithout some limiting principle [applied to the term 'contaminant'], the pollution exclusion clause would extend far beyond its intended scope, and lead to some absurd results" (first alteration in original) (citation omitted)); *Ins. Co. of Ill. v. Stringfield*, 685 N.E.2d 980, 982 (Ill. App. Ct. 1997) (declining to view the term "contaminant" in isolation and holding that pollution exclusion did not bar coverage for a child's injuries from ingesting lead-based paint).[3]

---

3.    State Farm, on the other hand, asserts that "a majority of courts have expressly denounced the theory that pollution exclusions only apply to 'environmental pollution'" and cites several cases declining to narrowly interpret the term "pollutant." *See, e.g.*, *Auto-Owners Ins. Co. v. Hanson*, 588 N.W.2d 777, 780–81 (Minn. Ct. App. 1999) (holding that the chipping and flaking of lead paint on the windowpane of apartment was a "discharge,

(continued . . .)

[¶24.] Notably, however, in *Wausau,* this Court considered, and rejected, the same concern raised by the Grunewaldts, namely that if the term "contaminant" was interpreted broadly, "any substance would meet the exclusion." *See* 2000 S.D. 116, ¶ 20, 616 N.W.2d at 405 (quoting *Guilford Indus., Inc. v. Liberty Mut. Ins. Co.*, 688 F. Supp. 792, 794 (D. Me. 1988)). The Court noted that in *Guilford*, the district court ultimately determined that the exclusion was not overly broad because "to fall within the exclusion, the substance must meet a 'certain very precisely drawn circumstance[ ]: if it is an irritant or contaminant.'" *Id.* ¶ 20 (alteration in original) (quoting *Guilford*, 688 F. Supp. at 794). The Court then noted that Wausau's exclusion was likewise "intended not to cover any substance, but only those substances which irritate or contaminate."[4] *Id.* ¶ 21.

---

(. . . continued)

    dispersal or release" under the exclusion barring coverage); *Cincinnati Ins. Co. v. Becker Warehouse, Inc.*, 635 N.W.2d 112, 119–20 (Neb. 2001) (holding that a pollution exclusion barred coverage where fumes from floor sealant applied by a construction contractor were "discharged, dispersed, migrated or released"); *Wilson Mut. Ins. Co. v. Falk*, 857 N.W.2d 156, 171 (Wis. 2014) (concluding that manure seeping into a well is unambiguously within the definition of a pollutant); *Bituminous Cas. Corp. v. Sand Livestock Sys., Inc.*, 728 N.W.2d 216, 221 (Iowa 2007) (finding carbon monoxide to be a "gaseous irritant or contaminant" and thus within the "extremely broad" definition of "pollutants").

4.     The dissent in *Wausau* espoused the same view advanced by the Grunewaldts, that a broad construction of the terms "irritant" and "contaminant" would render the pollution exclusion meaningless. 2000 S.D. 116, ¶ 35, 616 N.W.2d at 409 (Gilbertson, J., dissenting). The dissent distinguished the holding in *Guilford* by noting that the contaminant or irritant in the case was oil, a clearly recognized pollutant, as opposed to the cement dust at issue in *Wausau*. *Id.* ¶ 37. Notably, the dissent suggested that to be considered a "pollutant," a substance "must generally 'occur in a setting such that [it] would be recognized as a toxic or particularly harmful substance in industry or by governmental regulators.'" *Id.* ¶ 38, 616 N.W.2d

(continued . . .)

[¶25.] In light of this Court's decision in *Wausau* and the plain language of State Farm's pollution exclusion provisions, the circuit court correctly applied this precedent when determining that the allegations in Agtegra's complaint clearly fell within State Farm's policy exclusions. The court thus properly held that State Farm has no duty to defend or indemnify the Grunewaldts in the lawsuit initiated by Agtegra.

[¶26.] Affirmed.

[¶27.] JENSEN, Chief Justice, and KERN, SALTER, and MYREN, Justices, concur.

---

(. . . continued)

at 409–10 (citation omitted). Here, assuming the truth of the allegation in Agtegra's complaint that wheat contaminated with pesticide or other foreign substances, including fertilizer, is subject to seizure and citation per FDA regulations, it appears that State Farm's exclusion would bar coverage even under the *Wausau* dissent's analysis.